MONROE, C. J.
It appears from the petition, exhibits, and return herein that the Board of Liquidation of the State Debt (hereafter called “board,” or relator) is a corporation created by Act No. 3 of 1874 and, by that act and by Act No. 205 of 1912, charged with certain duties and vested witho certain discretion in the matter of the public debt and the public funds. Thus the act of 1912 declares: Section 1: That all funds of the state shall be deposited daily when practicable, in agencies as thereafter provided. Section 2: That the fiscal agents shall be such banks, organized under the laws of the state, as the board shall select. Section 3: That one half of all state funds shall be deposited in the banks in New Orleans, and that the other half shall be distributed, as nearly as practicable, in equal amounts among the *574 banks of the six other congressional districts of the state. Section 5: That the board shall require as security for depositsvof state funds certain government bonds, which shall be accepted at a valuation to be fixed within the discretion of the board, or, in lieu thereof, may accept bonds of indemnity, with authorized surety companies as sureties. . Section 6: That the board shall biennially send out a circular letter to all the banks of the state, inviting bids for deposits, and that all banks desiring to become fiscal agents shall submit their bids in writing. Section 7: That it shall be the duty of the board “to use all reasonable and proper means to secure to the state the best terms and the highest rate of interest consistent with the safe-keeping and prompt,repayment of the funds when demanded, and to let the 'funds to the highest bidder therefor consistent with the safety of such funds.” The act contains various provisions upon the subject of loans, for which the state may call upon the depositaries of its funds, and upon other matters.
It further appears: That, agreeably to the provisions of the act, the board, after sending out the circular letter, as required, and receiving bids, awarded contracts for the' deposit of all the state funds, amounting, in average daily balances, to about $2,000,000, to a number of banks in the several congressional districts, which, acting together, made a bid for the whole amount; that each bank participating in the bid received 'its proportion of the deposits, and that among the banks so participating were the Bank of Baton Rouge, the Capital City Bank, and the Washington Bank & Trust Company, which received all the deposits to be made in the Sixth congressional district.
That thereafter the Louisiana Trust & Savings Bank, also established in the Sixth congressional district, instituted a proceeding in the district court for the parish of East Baton Rouge, in which, alleging that the course thus pursued was unauthorized and illegal, and that the board had ignored a bid made by it, whereby it became entitled to one-fourth of the deposits to be made in that district, it prayed that the board be enjoined from declaring the banks mentioned to be successful bidders for any part of the funds to be deposited in said district, from awarding any contract to them, or either of them, therefor, and from executing any such contract, if already made, “or depositing any part of said funds in said banks.” It further prayed that the board and the three banks mentioned be cited, and that, “after legal delays and due proceedings,” the awards to said banks be decreed null, and that the board be ordered to show cause, on a day to be fixed by the court, why a writ of mandamus should not issue, directing it to reassemble its members, and, after reconsidering the bids which had been received, declare it (Louisiana Trust & Savings Bank) the successful bidder for one-fourth of all the funds to be deposited in said Sixth district, and award and execute a contract accordingly. A preliminary and ex parte injunction was issued, as prayed for, on a bond of $3,000, prohibiting the board from declaring either of the defendant banks a successful bidder for the deposits, from awarding any contract or contracts to them, or either of them, and from depositing any funds with either; and a rule nisi was ordered, directing the board to show cause, on May 6th, why a writ of mandamus should not issue. And just here it is proper to say that a proceeding similar in all respects to that which has been thus described had been instituted by certain banks in New Orleans, and that similar orders had been made, so that considerably more than $1,000,000 of state funds were, and are now, controlled, to the extent that has been stated, by ex parte injunctions issued from a state court; further action in the other proceeding being stayed by common consent to await the re- *576 suit of the application which we are now considering. Returning to the narrative of events in the proceeding which we are asked to review: Judge Brunot, the judge of the court in which that proceeding was instituted, having some interest which seemed to require it, recused himself, and Judge Schwing, who presides in the court of a neighboring district, was called-to act in his stead. Upon the return day of the rule, the board excepted to the jurisdiction of the court, upon the ground that, as a state agent or arm of the state government dealing with state funds, it is not amenable to suits in state courts, save in cases specially authorized by law. And it further excepted that there is an improper cumulation of causes of action; that the contracts mentioned in the petition have been entered into and are in course of execution, and that their validity cannot be inquired into in a proceeding by mandamus; that there is a misjoinder and a nonjoinder of parties defendant, and who should be made defendant; and the board appears, then, to have completed its return to the rule for mandamus by filing an answer. The defendant banks filed exceptions to the demands made against them, which did not, however, include the application for mandamus, and, as they had been cited to answer only to an ordinary suit, and their exceptions were not fixed for trial on the return day of the rule for mandamus, they were not before the court for the purposes of any action then taken. On the hearing of the rule one of the counsel representing the complaining bank made a request of the court and obtained a ruling as follows, viz.:
“We now ask that your honor take up and try this case as an entirety. In proceedings of this character it is customary for all defenses to be put in, and for the case to be tried as a whole; your honor reserving your judgment on the exceptions.
“There is a special reason why this case should be proceeded with in this manner, * * * that the answers are inconsistent with the contentions of the exceptions, and we will cite your honor authorities * * * on that point. By the Court: I think, to best serve the administration of justice, the case should be tried as a whole, and the court will so order. * * * By Mr. Lemle: I did. not exactly grasp the import of your honor’s ruling. You said you would take up the case and pass upon it as whole. What does ‘whole’ refer to? Does it refer to all the issues involved in this suit? By the Court: Yes, sir; all of the issues involved in the suit.”
Counsel for respondents thereupon reserved a bill of exception to the ruling so made, and asked for “48 hours time in which to apply to the Supreme Court for a writ of prohibition,” and, the delay having been granted, the board made the application that we are now considering for writs of certiorari and prohibition, to be directed to the judge a quo and to the Louisiana Trust & Savings Bank, requiring them to send up copies of the papers in the case, and forbidding them to proceed further in the matter of the application for the writ of mandamus, “or otherwise in said entitled’ and numbered cause.” The judge, made respondent, excepts on the ground that the application, as to either of the writs, is premature, and on the further ground that relator has an adequate remedy by appeal. He also calls attention to the fact that he received no notice of the intention to apply for the writ of certiorari.
[1] It is familiar jurisprudence that this court will not issue the writ of prohibition to, prevent an exercise of jurisdiction by an inferior court until that court has been afforded an opportunity to determine, for itself, and has determined, the question whether it is vested with the jurisdiction about which the dispute has arisen; and the jurisprudence is equally familiar to the effect that this court will not review the rulings of inferior courts, by means of writ of certiorari or otherwise, where the party complaining is afforded an adequate remedy by appeal. The implication, in the one case, is that, when an. inferior court has overruled *578 an exception to the jurisdiction, it will ordinarily, stop there, if requested, long enough to afford the exceptor an opportunity to apply to the proper court for a review of its ruling, and will not, in deciding the question of jurisdiction, which it is authorized to decide, deal also with the merits of a case of which, upon the merits, it may be without jurisdiction. And, in the other case, if the question, whether the complaining litigant has an adequate remedy by appeal .from an interlocutory judgment is in dispute, and affords ground for reasonable doubt, the wiser course to pursue would seem to be to afford such litigant an opportunity to have that question also determined by the higher court, rather than to proceed farther, while leaving it undetermined.
The Code of Practice declares that:
“The defendant need not plead to the merits, if he decline the jurisdiction of the court before which the suit is brought.” C. P. art. 322.
The rule thus declared was applied in State ex rel. Hart v. Judge, 104 La. 108, 28 South. 836, where the district court was prohibited from compelling defendant to proceed to the trial of a rule for alimony until his plea to the jurisdiction in the main action for separation a mensa et thoro should have been acted on, and in Dugue v. Levy, 115 La. 83, 38 South. 902, it was held that (quoting the syllabus):
“Parties called on to respond in this court to applications for writs of prohibition^ mandamus, and the like, who except that they have not been notified of the intention to make such applications, * * * do not waive the exception by answering to the merits, -since in such cases all matters of exception and defense are required to be pleaded at the same time, and to hold that the answer to the merits waives the exception would be to hold that the rule in question [referring to a rule of this court which requires that notice shall be given of the intention to apply for the writs mentioned] can be successfully invoked only by abandoning all defenses to the merits.”
[2] It will he understood, therefore, that a litigant is as much entitled to the benefit of a well-founded exception in a case (such as an application for the writ of mandamus) in which all matters of exception and defense are to be pleaded at once as in an ordinary case in which such matters may be pleaded separately. In the ordinary case he has the right to demand that the exception to the jurisdiction be disposed of before he even pleads to the merits. In the other case, and because the remedy by mandamus is provided where “the slowness of ordinary legal forms is likely to produce such a delay that the public good and the administration of justice will suffer from it” (C. P. art. 831), though the litigant must file his answer, with his exception, and submit his whole case, it does not follow that the judge should so decide the matters thus submitted as otherwise to defeat the purpose and nullify the effect of the exceptions. In other words, if it be necessary, in order to give the exceptor the benefit of his exceptions, the judge, even though the whole case has been submitted, should decide the exceptions separately and withhold his judgment upon the merits. It may be that in most cases the litigant will not be prejudiced by a judgment which disposes of the merits and the exceptions at the same time, but whether that be so in any particular case is a matter to be considered by the trial judge.
From the return of the learned respondent judge we infer that the views thus expressed, though differing in some particulars, do not materially differ in the result from that entertained by him. Thus he says:
“Finally, relator can suffer no injury whatever from the ruling of respondent in referring the exceptions to the merits. After the case has been tried as a whole, relator [meaning, respondent, as we take it] will first consider and pass on the exceptions. * * * If the exception to the jurisdiction, or the exception of no cause of action, or, perhaps, some other exception pleaded by the board is sustained, respondent will not consider the cause on its merits, and plaintiff’s suit will be dismissed, and there will be no necessity for either the writ of certiorari or prohibition. If the plea to the *580 jurisdiction is overruled, it will then be soon enough to invoke the supervisory jurisdiction of the Supreme Court. And certainly respondent has a right to pass on those exceptions in the first instance; otherwise the Supreme Court will become a court of original jurisdiction, and not a court of appeal, as contemplated by the Constitution.”
The Constitution vests this court with supervisory as well as appellate jurisdiction, but, as we have often held, the grant is not intended, in either case, to oust the jurisdiction, whether original or appellate, conferred upon the other courts of the state, but is merely intended to provide a means and a court by which the action of such other courts, in exercising the jurisdiction conferred on them, may be reviewed.
We agree with our learned Brother that he has the right to pass on the exceptions, in the first instance, and that this court should not be called on to interfere until he shall have done so.
It is therefore ordered that this proceeding be dismissed, without prejudice to relator’á right to renew its application at the proper time, and that relator pay all costs.