FOURNET, Justice.
 

 This is a proceeding by mandamus to compel the Governor of the state of Louisiana to cancel two mineral leases executed by the late Gov. O. K. Allen to William T. Burton, covering the water bottoms of certain townships located in Caddo and Bossier parishes and to execute a mineral lease of the lands to appellant, C. M. Brenner. Coupled with the mandamus proceeding is an action of nullity, whereby appellant seeks to have the two leases to Burton declared null.
 

 Both the Governor and William T. Burton filed exceptions (1) to the jurisdiction of the court ratione materiae; (2) misjoinder of parties defendants, and of causes of action or improper cumulation of actions; and (3) of no cause or right of action. Burton coupled with his exception to the jurisdiction of the court ra
 
 *105
 
 tione materiae, an exception to the jurisdiction of the court rationae personae. With full reservation of his rights under the foregoing exceptions, the Governor, in response to the rule, filed a general denial.
 

 The district court sustained all the exceptions, and the plaintiff has appealed.
 

 The allegations of appellant’s petition, which must be accepted as true for the purpose of disposing of the exceptions, are that the late O. K. Allen, then Governor of the state of Louisiana, .pursuant to the application of W. T. Burton, and in conformity with the provisions of Act No. 30 of the Extra Session of the General Assembly of Louisiana for 1915, as amended by Act No. 315 of the-Regular Session of the Legislature of Louisiana for the year 1926, issued an order for the advertisement of mineral 'leases on water bottoms in townships 20, 21, 22, and 23 north, ranges 14, 15, and 16 west in the parishes of Bossier and Caddo; that on the 17th of August, 1935, a mineral lease was granted on the lands to W. T. Burton, but it was subsequently discovered that the advertisement for bids had not been advertised in Caddo parish aiid therefore the Governor caused a new advertisement for bids to be published as the statute requires; that in accordance with the requirements of the act a short summary of the terms and conditions of the lease to be executed was incorporated in the advertisement, one of which was that
 
 the lessee must agree to drill within on? year,
 
 or forfeit the lease; that he submitted a bid offering to pay $100 as a cash bonus and $100,000 in oil at the rate of $10,000 per producing well payable out of 7/16 of tlie oil produced from each well, in addition to the royalties provided by law, and agreed to drill for oil or other minerals on said lands within one year in accordance with the terms prescribed in the advertisement; that the only other bid was that of W. T. Burton, who offered a $250 cash bonus and $10,000 in oil payable out of 1/8 of 7/8 of the first oil produced, in addition to the regular royalties, hut in his bid he agreed to drill a well within two years instead of one, as stipulated in the advertisement; that even though he submitted the only legal bid in accordance with the advertisement, the late Governor O. K. Allen executed a purported lease with Burton, granting him two years within which to drill, contrary to the terms prescribed in the advertisement. Appellant further alleged that he is a citizen and taxpayer of Shreveport, Caddo parish, La., and having submitted the only legal bid with the most advantageous and highest offer, he was entitled to have the lease awarded to him; that the Governor’s action was not only illegal but in disregard of the rights of appellant'and in violation of his constitutional rights in that it deprived him of his property without due process of law in violation of section 6 of article 1 of the Constitution of Louisiana for the year 1921, and of the Fourteenth Amendment to the Constitution of the United States. He also alleged that the lease dated August 17, 1935, was recorded in Book 343, folio 558 of Caddo parish, but the lease dated January 23, 1936, had not been recorded up to the date of the filing of the petition.
 

 
 *107
 
 The first complaint is that the court erred in sustaining the exception to the jurisdiction of the court ratione personae which was coupled with one ratione materiae in the same plea. It is unnecessary to discuss the matter, except to state that the jurisprudence of this state is so well settled that an exception to the jurisdiction of the court ratione personae must be tendered
 
 in limine
 
 and
 
 alone
 
 and that if any other issue going to the merits be conjointly raised with such exception, the exception ratione personae must necessarily fail, because defendant thereby voluntarily submits himself to the jurisdiction of the court and waives his rights under such exception. State v. Buck, 46 La.Ann. 656, 15 So. 531; Martel Syndicate v. Block et al., 154 La. 869, 98 So. 400, and other cases therein cited. The exception is therefore overruled.
 

 The exception to the jurisdiction of the court ratione materiae, that is, whether the court has jurisdiction to pass upon the legality of a lease executed on water bottoms of the state by the Governor, is primarily based on the ground that such a suit is one against the state, not authorized by the Legislature, and also on the ground that the Governor, as the Chief Executive of the state, is not subject to a writ of mandamus.
 

 The General Assembly of the state of Louisiana passed Act No. 30 of its Extra Session of 1915, “authorizing the Governor to lease lands, including lake and river beds and other bottoms, belonging to the State, and
 
 providing the terms and conditions of such leases.”
 
 Section 1 of the act authorizes the Governor to lease these lands
 
 “under the terms and conditions hereinafter set forth.”
 
 Section 2 prescribes the formalities to be followed by any one who may desire to lease any such land. (Italics ours.) By section 3 the Governor is given the discretionary power to advertise for bids when an application is made, and prescribes the procedure which he must follow if he proposes to lease the land, that is, to advertise for such bids in the official journal of the state and in the official journal of the parish where such land is located for a period of not less than fifteen days, setting forth therein “a description of the land to be leased by the State, the time when bids therefor will be received,
 
 a short summary of the terms and conditions of the lease or leases to be executed,
 
 and, in his discretion, the royalty to be demanded should he deem it to the interests of the State to call for bids on the basis of a royalty fixed by him; provided, that if such lands be situated in two or more parishes such advertisement shall appear in the official journals of all of the parishes where such lands may partly lie.” (Italics ours.) Section 4, as amended by Act No. 315 of 1926, makes it the mandatory duty of the Governor to open the bids in public at'the State Capitol on the date and at the hour set forth in the advertisement, and vests in him the authority to execute the leases “to the highest bidders therefor, under such terms and conditions as to him seem proper,” with the right to reject any and all bids.
 

 It was held, in the case of State ex rel. John McEnery v. Francis T. Nicholls, Governor, et al., 42 La.Ann. 209, 7 So.
 
 *109
 
 738, 742, that a suit against the Governor and the register of the state land office to compel them to deliver patents for certain lands and to transfer certain swamp land indemnity certificates, authorized under Act No. 23 of 1880, was not a suit against the state. The court in that case said:
 

 “In no proper sense is the state a party to this suit, and no judgment or relief is asked for against her. * * *
 

 “The rights which relator seeks to enforce flow out of Act 23 of 1880, by the terms of which the governor was selected as the mandatory of legislature to carry its will into effect.”
 

 In the case of State ex rel. Higgins v. Aicklen et al., 167 La. 456, 119 So. 425, 427, it was contended, as it is in this case, that the action of the Governor was not subject to judicial investigation. It was claimed that the court had no power to review the actions of the Governor in proclaiming the village of Metairie Ridge incorporated under the authority vested in him by the eleventh section of Act No. 136 of 1898.
 

 In discussing the right of the Legislature to prescribe rules and regulations for the creation of municipal corporations under the eleventh section of Act No. 136 of 1898, the court quoted, with approval, the following from Corpus Juris, Vol. 43, § 17, pp. 77-79, viz.:
 

 “In a majority of the states, the creation of a municipal corporation within the territorial limits of a state is within the power of the Legislature of the state; and, subject only to such constitutional limitations and restraints, if any, on the exercise of the power as may exist, the power of the Legislature in this respect is absolute, plenary, and exclusive, to be exercised according to its judgment, will, and discretion, no other body, officer, or person having authority to incorporate a municipality within the borders of the state, except when and as empowered by law; and then it is not the ministerial acts of the officer or court, hut the sovereign will expressed in a solemn act of legislation, that speaks the municipal microcosm into being and gives it life and power.”
 

 The court disposed of the contention that the action of the Governor was not subject to judicial review as follows:
 

 “It is plain, therefore, that the fact that the Governor happens to he the agency selected by the Legislature, in the eleventh section of the Act 136 of 1898, to see that the rules and regulations prescribed by the Legislature for incorporating a municipality are complied with in each instance, does not make his finding that the prescribed rules and regulations are complied with in any given case an executive function ; for the Legislature might have selected any other officer, or any appropriate tribunal or board, to perform that function. * * *
 

 “The fact that the proclamation declaring the village of Metairie Ridge incorporated was that of the Chief Executive does not make the question in this case a political question, not reviewable by the courts, for the Governor was not performing an executive function in issuing his proclamation. He was acting under the same authority that any other agency to whom
 
 
 *111
 

 the Legislature might have delegated the authority would have acted under.
 
 [Italics ours.] * * *
 

 “Not only was it not an executive function for the Governor to create a municipal corporation, but it was not a matter within his discretion to determine whether a petition signed by two-thirds of tlie qualified electors residing in the hamlet should first be presented to him.
 
 That was a condition imposed by the Legislature, withoiit which the Governor had no authority or jurisdiction to- inquire into the matter.”
 
 (Italics ours.)
 

 We held, in the case of State ex rel. Porterie v. Grace, 184 La. 443, 166 So. 133, 136, that should the last portion of Act No. 9 of the Extra Session of 1928 be construed “as giving to the Governor and the register of the state land office the absolute and final authority to do as they see fit with the rights and interests of the state in her mineral leases and as putting the acts of these officers in that respect beyond the control of the courts,
 
 the statute would be unconstitutional.”
 
 (Italics ours.)
 

 Moreover, we find in the course of the opinion the following language, which is most apposite to the issues here:
 

 “Of course,
 
 if a Governor of the state,
 
 after granting a mineral lease to the highest bidder, on the terms and conditions fixed by him and duly advertised,
 
 should
 
 thereafter
 
 arbitrarily approve a material change in the terms or conditions of the lease, to the advantage of the grantee and to the prejudice of others who might have bid upon the lease, Jhe approval of such a change in the terms or conditions of the lease would be an abuse of the authority vested in the Governor and the register of the state land office by Act No. 9 of the Extra Session of
 
 1928,
 
 and would be subject to annulment by the courts.”
 
 (Italics ours.)
 

 It was held in the case of Richardson v. Liberty Oil Company et al., 143 La. 130, 78 So. 326, as is well expressed in the syllabus by the court, that:
 

 “A suit by a citizen to recover possession of real property, or to enforce a real right, against officers or agents of the state, who assert title and possession in behalf of the state, is not a suit against the state, within the meaning of the Eleventh Amendment to the Constitution of the United States.”
 

 See, also, Abbott et al. v. Louisiana Securities Commission, 149 La. 354, 89 So. 211.
 

 In support of their contention that the court is without jurisdiction ratione materiae, counsel for appellees have filed voluminous briefs citing many cases, including State ex rel. Oliver, v. Warmoth, 22 La.Ann. 1, 2 Am.Rep. 712, and State ex rel. Mississippi Valley Navigation Company v. Warmoth, 24 La.Ann. 351, 13 Am.Rep. 126, which we find unnecessary to analyze or distinguish here. Suffice it to say that the later jurisprudence of this state and the correct view are in accord with safer and sounder conceptions of public policy.
 

 The power to lease lands, including lake and river beds and other bottoms, belonging to the state of Louisiana, is the exclusive
 
 *113
 
 province of the Legislature (Constitution of 1921, art. 4, § 2). By its Act No. 30 of the Extra Session of 1915, as amended by Act No. 315 of 1926, the Legislature made the Governor its mandatary to lease the lands belonging to the state under the terms and conditions prescribed in the statute. (The Governor, in carrying out the mandate of the Legislature, has no more authority than that which is specially delegated to him therein. While the Governor is given discretion as to whether or not he will ask for bids for the leasing of the lands, yet he has no power or authority to lease without advertising the property as is expressly required by the act, which must contain a description of the land to be leased; the time when the bids therefor will be received; and a short summary of the terms and conditions of the lease to be executed. Furthermore, the Governor has been given no discretion as to when and where the bids shall be opened. We are of the opinion that the actions of the Governor in granting leases of lands belonging to the state are subject to review by the courts and whenever his acts are found to be in violation of the provisions of the act authorizing him to execute such leases, they will be set aside.
 

 This brings us to the issues raised by the exception of misjoinder of parties defendant and of improper cumulation of actions.
 

 “The plaintiff is not allowed to cumulate several demands in the same action, when one of them is contrary to or precludes another.” Article 149, Code of Practice.
 

 In order to ascertain whether the action against the Governor and the action against Burton are dissimilar or whether one precludes the other, we must refer to the prayer of plaintiff’s petition, which reads in part as follows: “Petitioner prays
 
 that the alternative writ of mandamus do issue, directed to Honorable James A. Noe, Governor of Louisiana,
 
 directing and commanding him to cancel said purported contracts of lease of said mineral rights, executed on August 17, 1935 and on January 23, 1936, to said William T. Burton; or to show cause in this Honorable Court at such time and place as the Court may fix, which would legally justify his refusal to do so;
 
 and that William T. Burton, co-defendant herein, be cited and served with the process of this Court-,
 
 and on the trial of any and all issues presented by said co-defendants, this Honorable Court render a judgment cancelling said purported contract of lease, as an absolute nullity and executed in the face of prohibitory law.” (Italics ours.) He then further prays that the Governor be directed and commanded to execute a contract of lease in his favor and for general relief.
 

 Thus it may be seen that plaintiff seeks to have the court order the cancellation of the lease contracts to Burton, first, physically by the Governor in a summary proceeding, and, second, judicially against Burton in an ordinary proceeding. Suppose the rule against the Governor had been made absolute on the return day and the Governor had been ordered to cancel the leases in controversy and to issue new leases to plaintiff, what would be the
 
 *115
 
 necessity of having the court subsequently judicially declare the leases null? The primary purpose of a mandamus proceeding is to prevent a denial of justice and should issue in all cases where the law has assigned no relief by the ordinary means. Article 830, Code of Practice. But under the express provisions of article 831 of the Code of Practice, the writ of mandamus
 
 may issue
 
 “at the discretion of the judge, even when the party has other means of relief,
 
 if the slowness of ordinary legal forms is likely to produce such a delay that the public good and the administration of justice will suffer from it.”
 
 (Italics ours.) Being summary in its nature, no citation issues and the litigant must file his answer with his exceptions on the return day fixed by the court, unless granted further time to plead. Shaw v. Howell et al., 18 La. Ann. 195; State ex rel. Louisiana Trust & Savings Bank v. Board of Liquidation of the State Debt et al., 135 La. 571, 65 So. 745. On the other hand, the suit to cancel a contract affecting realty, as in the case at bar, must be by the ordinary action, necessitating citation and service of process and the ordinary legal delays. Calcasieu Building & Loan Ass’n v. Goudeau et al., 182 La. 247, 161 So. 599, and cases therein cited.
 

 We therefore conclude that the mandamus proceeding and the action of nullity, one being summary in its nature and requiring quick and immediate action, and the other being an ordinary action, requiring the ordinary legal delays, are inconsistent. The former is contrary to and precludes the latter. The exception of improper cumulation of actions was therefore properly sustained.
 

 Having reached this conclusion, it is unnecessary to discuss the exceptions of no cause and no right of action.
 

 For the reasons assigned, the judgment of the district court is amended so as to read as follows:
 

 It is ordered, adjudged, and decreed that plaintiff’s suit be dismissed as of nonsuit, at hi» cost.
 

 O’NIELL, C. J., dissents from the ruling that there is an improper cumulation of actions.