The plaintiff alleges in his petition that he is a duly qualified elector in Ward 2 *Page 529 
of Avoyelles Parish and that he is able to read and write and was assessed with more than $500 worth of property in said Parish on November 3, 1942; that on said date he was elected a member of the Avoyelles Parish School Board for said ward, as will appear from the proclamation of the result of said election issued by the Secretary of State according to law, a copy of which proclamation is annexed to the petition and made part thereof; that it was the ministerial duty of the defendant, as Governor of the State, to issue a commission to him within not less than thirty days from said election, but the Governor refused and refuses to issue a commission to him. He prays for the issuance of an alternative writ of mandamus against the Governor to compel him to issue a commission to him as a member of said school board, and deliver the commission to the Secretary of State for his counter signature as required by law.
The Governor appeared through the Attorney General and filed an exception of no cause or right of action based on the ground that the issuance of a commission to an elected officer is a discretionary power of the Chief Executive, and he cannot be forced by mandamus to do so. The court reserved its ruling on the exception until after the testimony was taken.
An answer and return was filed on behalf of the Governor in which it is admitted that plaintiff received a majority of the votes at the said election and that the Governor had refused to issue him a commission. It is alleged that the reason of the Governor's refusal to issue the commission was that it had been brought to the attention of the Governor that plaintiff was not qualified to hold the office of member of the school board for the reason that he was not assessed with any property in Avoyelles Parish at the time of said election.
In a supplemental petition, plaintiff alleges in the alternative that in the event the court should hold that he is disqualified to hold said office for the reason that he was not assessed with property of not less than $500, he alleges that Section 17 of Act 100 of 1922, which fixes said requirement as one of the qualifications to hold said office, is unconstitutional, null and void insofar as it attempts to make such assessment a requirement for eligibility to said office.
After hearing evidence, the trial court rendered a judgment overruling the exception of no right and no cause of action, and on the merits found in favor of the defendant and dismissed plaintiff's suit. He has appealed, and the defendant answered the appeal, asking that the judgment be amended by sustaining the exceptions.
As a general rule a public official cannot be forced by mandamus to perform an official duty where he is invested with a certain amount of discretion and judgment as to the manner and the necessity of the performance of such duty. But where this duty is fixed by law and its performance is made mandatory on the official, he can be compelled by a mandamus to perform that duty, even though the statute may require, in some degree, a construction of the law and the determination of a question of fact as to whether or not the duty is to be performed. Cook v. City of Shreveport, 163 La. 518, 112 So. 402; Code of Practice, Articles 830 and 834.
Section 25 of Act 224 of 1940 makes it the duty of the Governor within not less than thirty days after a general election to issue commissions to all officers shown by the compilation of the returns by the Secretary of State to have been elected as provided for in the preceding section, except those officers to whom no commission is required to be issued.
As it is conceded that plaintiff was elected a member of the school board at said election, it was the duty of the Governor to issue a commission to him. It is contended, however, that the Governor, as the Chief Executive of the State, is required to see that the laws of the State are observed, and that, as Section 17 of Act 100 of 1922 requires an assessment of property in the parish of not less than $500 for a person to be eligible to hold the office of member of the school board, and as the Governor was advised that plaintiff was not qualified for the office in this respect, it was the duty of the Governor to refuse to issue the commission, and his discretion and judgment in so refusing cannot be controlled by the judiciary through a mandamus proceeding. That it is the right and the duty of the Governor to ascertain whether an elected official possesses the legal qualifications to hold the office to which he was elected before issuing *Page 530 
him a commission, can hardly be questioned. But to say that his judgment and decision on that question is final and not subject to judicial review is not tenable. State ex rel. Brenner v. Noe, Governor, et al., 186 La. 102, 171 So. 708; State ex rel. Wimberly v. Barham et al., 173 La. 488, 137 So. 862.
In the case of State ex rel. Ecuyer v. Burke, State Treasurer, 33 La.Ann. 969, the relator sought through mandamus proceedings to compel the Treasurer to stamp on the bonds held by him the interest rate on said bonds as the Treasurer was required to do by law. The Treasurer in defense of his refusal to stamp said bonds alleged that the relator had failed to surrender the interest coupons attached to the bonds as the law required before stamping the new interest rate on the bonds; that as Treasurer he had no authority to stamp said bonds until the said coupons were surrendered; that the service required of him was not a ministerial duty; that the judiciary has no control over the executive and co-ordinate branch of the state government, and prayed that the mandamus be refused.
In passing on the point raised in that case the court made the following pertinent statement: "In his answer, defendant, alleges that, the service required of him by relator is not a ministerial duty, and that the judiciary has no control over the executive and co-ordinate branch of the government except as regards purely ministerial duties of executive officers. As regards the first proposition, we decide that the service required in this case is the performance of a purely ministerial duty, and this is too plain to require argument. As to the second proposition, it is elementary; but while fully recognizing the independence and all the rights of the co-ordinate branches of the government, it is only necessary to say that it is the province and duty of the judiciary, whenever the question is properly brought before it in judicial proceedings, to decide whether duties sought to be enforced at the hands of officers, are or are not ministerial, and that it is of the essence of the judiciary to adjudge such questions, as otherwise these officers would themselves by their own decision be judges of their legal and constitutional powers."
The exception of no cause and no right of action was properly overruled.
As the sole reason assigned for the Governor's refusal to issue the commission was the lack of the proper assessment on the part of plaintiff, and as the plaintiff questions the constitutionality of this requirement, it is necessary to pass on this question before discussing the merits. It is obvious that, if this requirement is not constitutional, there would be no ground for refusing to issue the commission.
The ground urged against the constitutionality of the requirement that a school board member must, in addition to the other qualifications prescribed by law, be assessed in the parish at the time of the election with property of not less than $500 in value as required by Section 17 of Act 100 of 1922 is that Section 13 of Article VIII of the Constitution provides that no person shall be eligible to any office who is not a citizen of the State and a qualified elector in the district, parish, ward or municipality wherein the functions of the office are to be performed; that the Legislature in creating the office of parish school board member in the above act had no authority to add any additional qualifications to hold said office other than those provided for in Section 13 of Article VIII of the Constitution.
This contention is without merit. The Constitution, Section 10, Article XII, authorizes the Legislature to provide for the creation and election of parish school boards, and in carrying out this authorization the Legislature unquestionably had the right to fix the qualifications of the members of this board. There is nothing in the Constitution which prevents the Legislature from requiring qualifications for members of boards which it is authorized to create in addition to those required for all officers under Section 13 of Article VIII.
Hon. Robert L. Tullis, Dean Emeritus of the State University Law School, as amicus curiae, has filed an interesting brief urging the unconstitutionality of the assessment requirement for a member of a parish school board. The learned Dean concedes that the Legislature has unrestricted power to prescribe the qualifications of the officers and members of boards and commissions which it is authorized to create, unless prohibited from doing so by some provision in the Constitution. He contends that the fixing of a property requirement for eligibility to hold *Page 531 
the office of member of a parish school board is irrelevant and inappropriate as a qualification to hold this position, and because of this fact, he concludes that the framers of the Constitution never contemplated that the Legislature should be given the right to fix such qualifications for members of the parish school boards which the Legislature was authorized to create.
In the first place, we would say that the requirement for a member of a school board to be a property owner does have some relevancy to this position. His duties involve the raising and expenditure of public funds, the financial and taxing measures necessary for operating the schools, as well as the employment of teachers and supervising instructional courses. The Legislature in fixing this requirement may have considered that a property owner and taxpayer would be inclined to weigh more carefully questions involving the expenditure of public funds and the economical operation of the public schools than would a person who owns no property. And in the second place, as we have already stated, there is no restriction on the Legislature in Article VIII, Section 13, nor in any other part of the Constitution, which would prevent the Legislature from fixing this requirement as an additional qualification for a member of the school board, and we are not authorized to substitute our judgment as to what the qualifications of such member should be in place of that fixed by the Legislature under constitutional authority.
On the merits, we agree with the findings of the trial judge to the effect that plaintiff was not assessed with any property which he owned at the time he was elected. The community existing between him and his wife was dissolved by a judgment of court in 1924, and they were separated in property. Since that time he has represented his wife as agent, and, so far as the record shows, has not earned or acquired any means in his own name and in his own right.
A certificate of the Parish Assessor dated November 7, 1942, a few days after the election was held, shows that plaintiff was not then assessed with any property in the Parish of Avoyelles. He was assessed in 1942 with two trucks in the town of Marksville, in said parish, for $1,600. The evidence did not convince the trial judge, and it does not convince us, that he was the legal owner of these trucks. He was acting as the agent of his wife in the business in which these trucks were used. The application for the 1942 license for these trucks is made out in the name of Mrs. C.L. Dupuy and she is declared to be the owner. While it does not appear who made and signed these applications, as plaintiff was using the trucks in carrying on his wife's business as her agent, it is reasonable to assume that he knew about the applications and the fact that the license was issued in her name for the two trucks.
While plaintiff testified that the trucks were bought by him and in his name, he did not produce any bill of sale to show that the trucks were bought in his name. Nor did he explain where he got the money with which to purchase the trucks which were used by him in carrying on his wife's separate business, or why he was using his trucks in her business apparently without any remuneration whatever for their use. He and his wife were separate in property, and insofar as their property was concerned they sustained the relation to each other of unmarried persons.
Mrs. C.L. Dupuy was assessed with three pieces of property in 1942 in the sum of $2,740, the title to this property being in her name. The land consists of 18 acres suburban and one city lot valued at $1,700 and improvements on the lot valued at $1,040. She made application for a homestead exemption on all this property in April, 1943, stating that she was the owner of the property and claimed it as a homestead. Plaintiff testified that he built three tenant houses on his wife's property in 1940 and 1941 with his own funds and with her consent; that he owned these houses located on the property of his wife and that in June, 1942, he asked the assessor to assess him with these houses, but learned after the election that he was not assessed with them.
On November 8, 1942, the Assessor wrote the tax collector asking him to extend on the supplemental rolls for 1942 the assessment of the three tenant houses on the property of Mrs. C.L. Dupuy to Carnot L. Dupuy for $600. The supplemental assessment was said to be made for the reason that it was omitted for the year 1942. On December 8, 1942, the Assessor wrote the Louisiana Tax Commission for approval of this supplemental assessment, and the Commission sent an approval *Page 532 
of the assessment to the tax collector the latter part of December, but he refused to put the assessment on the rolls under the advice of the district attorney.
There is nothing in the record to show whether or not these tenant houses are included in the assessment of Mrs. C.L. Dupuy. Conceding the right of plaintiff to have the property put on the assessment rolls if he was the owner of it in 1942, yet we fail to see wherein he has proved he owned these houses. The requirement that a school board member shall be assessed with property of not less than $500 in value means that the property must be assessed to him as owner. The houses are on the lands admittedly owned by Mrs. Dupuy and plaintiff was her agent and handled her business, which leads to the presumption that these houses were built for her, and there is not sufficient evidence in the record to overcome that presumption.
For the reasons assigned, the judgment appealed from is hereby affirmed at plaintiff's cost in both courts.