274 So.2d 205 (1973)
Louis J. ROUSSEL, Plaintiff-Appellant,
v.
James A. NOE and State Mineral Board, Defendants-Appellees.
No. 8939.
Court of Appeal of Louisiana, First Circuit.
February 20, 1973.
Rehearing Denied March 20, 1973.
*207 Gibson Tucker, Jr., Tucker & Schonekas, New Orleans, for plaintiff-appellant.
John L. Madden, Asst. Atty. Gen. and William J. Guste, Jr., Atty. Gen., Baton Rouge, James Wilkinson, III, Wilkinson & Wilkinson, New Orleans, for defendants-appellees.
Before SARTAIN, ELLIS and BLANCHE, JJ.
SARTAIN, Judge.
Plaintiff-Appellant, Louis J. Roussel, instituted this litigation as a class action, against the defendants, James A. Noe, individually, and the State Mineral Board of the State of Louisiana. He alleges in his petition that he is a resident of the Parish of Orleans and the State of Louisiana, and as such paid taxes to the State of Louisiana, which taxes have contributed directly to the financial burden of operating the government of the State. He asserts that as a member of the class comprised of many persons similarly situated (taxpayers) that he is entitled to bring this action under the special provisions of C.C.P. Arts. 591 et seq. (Class and Secondary Actions). He alleges with detailed particularity that Noe in concert with other State officials, commencing in October of 1934, conspired to utilize their respective positions of trust to obtain mineral interests in vast areas of unencumbered state properties. It is contended that this conspiracy was confected through the creation of the domestic corporation known as Win or Lose Corporation whereby the true identities of the actual beneficiaries were concealed. The name of Win or Lose Corporation was ultimately changed to Independent Oil & Gas Company, Inc. in February of 1951. This latter corporation was liquidated and the assets thereof were transferred to the stockholders, one of whom was defendant, Noe, who allegedly received 31/100ths of the 3/4ths of the 1/24ths overriding royalty on the State leases numbered 340 and 341. In the interim period between incorporation of Win or Lose Corporation and the liquidation of Independent Oil & Gas Company, Inc., the mineral interests originally obtained were conveyed to various individuals who in turn assigned the same to The Texas Company for the exploration of oil. It is alleged that by and through these various corporate maneuvers vast sums of money inured to the benefit of the defendant, Noe, to the detriment of the State and its taxpayers.
Plaintiff avers that Noe, as acting Lt. Governor and then as Governor of the State of Louisiana, used his official position to his personal advantage thereby breaching a public trust. He seeks to have the leases insofar as they pertain to the defendant, Noe, declared null and void and to require an accounting and reimbursement to the State of the sums received by him thereunder.
Plaintiff also seeks by mandamus to have the actions of the State Mineral Board on April 26, 1951, approving the assignment of Noe's mineral interests, declared invalid. Further, plaintiff alleges that the defendant, Noe, recently executed a purported assignment and mortgage affecting his mineral interests in favor of a bank in the City of New Orleans and *208 asked that the Board be enjoined from approving such assignment as the same will cause immediate and irreparable injury to the state and the class of persons he represents.
Numerous exceptions were filed by both Noe and the State Mineral Board. Noe appears through his own counsel and the State Mineral Board is represented by the Attorney General of the State of Louisiana. Peremptory exceptions are directed to prescription, nonjoinder of indispensable parties, no right of action, and no cause of action; the declinatory exception is related to venue; and, the dilatory exceptions are directed to lack of procedural capacity of the plaintiff, improper cumulation of actions, improper joinder of parties, vagueness, nonjoinder of necessary parties, prematurity and unauthorized use of summary process.
The trial judge sustained the exceptions of no cause of action, no right of action, nonjoinder of indispensable and necessary parties, failure to comply with formal requirements of pleading, and overruled the exceptions as to venue, vagueness, improper cumulation of actions, prematurity and unauthorized use of summary proceedings, from which judgment plaintiff has appealed. Defendant, Noe, has answered the appeal, asking that the judgment be affirmed insofar as it sustained the various exceptions and reversed as to those it overruled.
We shall discuss these exceptions in the order mentioned.

EXCEPTIONS OF NO CAUSE AND NO RIGHT OF ACTION
The Attorney General filed these exceptions which are based on two grounds. First, that plaintiff's action is not a class action for in styling it as such and purportedly speaking for all of the taxpayers of the State, coupled with joining the State Mineral Board as a party defendant, he has the State suing itself. Secondly, the right to institute, maintain and prosecute the cause herein stated is vested solely in the Attorney General by virtue of the provisions of Article VII, Section 56, of the Louisiana Constitution. Noe supports this contention and the trial judge concurred.
Article VII, Section 56, reads as follows:
"§ 56. Attorney general; qualifications; powers and duties; vacancies
"Section 56. The Attorney General and the assistants shall be learned in the law and shall have actually resided and practiced law, as duly licensed attorneys, in the State for at least five years preceding their election and appointment. They, or one of them, shall attend to, and have charge of all legal matters in which the State has an interest, or to which the State is a party, with power and authority to institute and prosecute or to intervene in any and all suits or other proceedings, civil or criminal, as they may deem necessary for the assertion or protection of the rights and interests of the State. They shall exercise supervision over the several district attorneys throughout the State, and perform all other duties imposed by law. (Emphasis ours.)
"In case of a vacancy in the office of Attorney General, the First Assistant Attorney General shall perform the duties of the Attorney General until his successor shall have been duly elected and qualified."
In his written reasons for judgment, the judge a quo stated:
"If this Constitutional provision (Art. VII, Sec. 56) is exclusive, then, of course, Mr. Roussel cannot bring this class action because it would be exclusively within the province of the Attorney General to do so. In my opinion, insofar as this type of suit is concerned, it is an exclusive provision in that it is the province and authority of the State of Louisiana and the Attorney General to act as a plaintiff. Individual taxpayers *209 cannot usurp the prerogative of the State simply because the State may not choose to act. It may well be that the administrations of Governors Jones, Davis, Long, Kennon and McKeithen have examined this issue and concluded that there are no merits to the facts and conclusions alleged in this case. If a taxpayer could file this suit on behalf of the State, then the door would be open to question any governmental act in a court proceeding in which a taxpayer may disagree. Because of that, the exceptions of no cause of action and no right of action leveled at the propriety of Mr. Roussel in filing this class action are sustained."
While urging that this is a proper class action, plaintiff alternatively submits that if this is not he is nevertheless entitled to pursue the relief sought as an individual taxpayer.
We are of the opinion that this is not a class action but that plaintiff is entitled to proceed as an individual taxpayer; and, that the Attorney General may intervene if he so desires and assert in his official capacity whatever position his judgment dictates is the proper one for the State of Louisiana.
As stated in Caswell v. Reserve National Insurance Company, 234 So.2d 250 (4th La.App. 1970), writs refused, C.C.P. Arts. 591, et seq. (Class Actions) were modeled after Rule 23 of the Federal Rules of Civil Procedure. Articles 591 and 592 provide as follows:
"Art. 591. Prerequisites
"A class action may be instituted when the persons constituting the class are so numerous as to make it impracticable for all of them to join or be joined as parties, and the character of the right sought to be enforced for or against the members of the class is:
"(1) Common to all members of the class; or
"(2) Secondary, in the sense that the owner of a primary right refuses to enforce it, and a member of the class thereby becomes entitled to enforce the right."
"Art. 592. Representation
"One or more members of a class, who will fairly insure the adequate representation of all members, may sue or be sued in a class action on behalf of all members."
Our reasons for concluding that the instant action cannot be considered as a class action are that the real party at interest, the State, is not a member of the class; there is no allegation that the State as the owner of the right has refused to act; and, it cannot be assumed that plaintiff will adequately represent all members of the class.
Class actions of the type here asserted by the plaintiff have been permitted in certain jurisdictions but the statutes authorizing such actions require, as a condition precedent, a showing of bad faith on the part of the officer who is charged with the responsibility of bringing the suit. 81 C.J. S. States § 193, p. 1258. Our statutes contain no such provision.
In State v. Barnett, 194 So.2d 452 (La. App.1966), writs refused, we stated that while there is no set percentage who must join as plaintiffs to constitute a class action, one student out of 7500 could not insure adequate representation of all members of so large a class.
The importance of closely scrutinizing the question of adequacy of representation is essential because of the conclusiveness of the action upon all members (as here, every taxpayer of the State of Louisiana) of the class. The issues determined in a true class action are res judicata as far as any member of the class is concerned, even though he neither joined in nor heard of the litigation. Caswell v. Reserve National Insurance Company, above.
*210 Our courts have long recognized the right of a taxpayer to seek judicial review, including the annulment of a contract, of acts of public servants which are alleged to have been contrary to law, unconstitutional or illegally confected. Donaldson v. Police Jury, 161 La. 471, 109 So. 34 (1926) and Stewart v. Stanley, 199 La. 146, 5 So.2d 531 (1941). As stated in Donaldson (109 So. 34, 38), "... The true doctrine of the cases in which taxpayers have been complainants is that they have the right to resort to judicial authority to restrain their public servants from transcending their lawful powers, or violating their legal duties in any unauthorized mode which will increase the burden of taxation or otherwise injuriously affect the taxpayers or their property."
The remaining issue as to the peremptory exceptions pertains to the application of Article VII, Section 56, supra. As shown above, the trial judge held that the article is exclusive in its purpose and that to permit a "class action" of this type would sanction the usurpation of the authority vested solely in the Attorney General. We must disagree because in our opinion the subject article has been interpreted to the contrary.
In Kemp v. Stanley, 204 La. 110, 15 So. 2d 1, 9 (1943), in analyzing Section 56 of Article VII, our Supreme Court stated:
"Analyzing the first paragraph of Section 56 of Article VII of the Constitution, it will be noted that it consists of three sentences. The first sentence does not pertain to nor have any bearing on the issues before us. The second one places the Attorney-General and his assistants in charge of all legal matters where the State is a party or in which the State has an interest, and requires them to attend thereto, and grants them the power and authority to institute and prosecute, or to intervene in civil suits or criminal proceedings whenever they deem it necessary for the assertion or protection of the rights and interests of the State. The third sentence gives the Attorney-General and his assistants the right to exercise supervision over the district attorneys throughout the State. If the first part of the second sentence which places the Attorney-General in charge of all legal matters in which the State has an interest means that he has the power and authority to completely exclude and eliminate district attorneys from participating in such matters by superseding, relieving and supplanting them, the latter part of the same sentence which more specifically defines the power and authority of the Attorney-General to institute, prosecute and intervene in any civil suit or criminal proceeding and to assert the rights and protect the interests of the State, is wholly unnecessary. If this language means that the Attorney-General has full and absolute charge of all legal matters in which the State has an interest to the complete exclusion and elimination of any District Attorney, that would be plenary power for all purposes and the balance of the sentence would be meaningless and a needless waste of words. Furthermore, the third sentence would be purposeless because it simply provides that the Attorney-General and his assistants shall have supervision of the several District Attorneys throughout the State. If the Attorney-General and his assistants, under the first part of the second sentence, have complete and absolute charge, to the complete exclusion of District Attorneys, of all legal matters in which the State has an interest, why should the members of the Constitutional Convention have then provided for the mere supervision of the District Attorneys by the Attorney-General? The latter part of the second sentence and the third sentence of Section 56 show that the members of the Constitutional Convention did not intend to grant the Attorney-General and his assistants, the complete and exclusive charge and control of all legal matters in which the State has an interest. If they intended *211 that such exclusive, unlimited, and extensive power and authority should be conferred upon the Attorney-General and his assistants, they certainly would have used appropriate language to convey that meaning. We are borne out in this interpretation by the contemporaneous construction placed by the Attorney-Generals of this State since 1921, upon these provisions of the Constitution, because it was only after the Legislature passed Act No. 24 of the First Extra Session of 1934, that the Attorney-General and his assistants claimed the right, authority, and power to supplant, supersede and relieve the District Attorney in criminal proceedings. The first case on the subject is State v. Major, 181 La. 822, 160 So. 425, decided by this Court on March 4, 1935." (Emphasis ours.)
Admittedly, Kemp dealt with the question of whether the Attorney General could supersede and relieve a District Attorney in toto of all participation in a particular criminal proceeding and as advisor to the Grand Jury. To this extent the facts differ from those in the case at bar. However, pertinent to the issue here is whether the Attorney General, by asserting that only he can institute the type of action filed by the instant plaintiff, can deprive a taxpayer of the right to have his day in court. The portions of Kemp quoted above convince us that he may not.
The merits of this case are not before us. The numerous defenses urged by Noe are yet to be considered. The Attorney General may agree or disagree with none or all of Noe's alleged defenses. These are issues which are addressed to his judgment and he may intervene if he so desires.
For these reasons the exceptions of no right and no cause of action should have been sustained only to the extent of plaintiff's effort to proceed via the procedural device of a class action. In all other respects the exceptions should have been overruled.

NONJOINDER OF INDISPENSABLE PARTIES
The trial judge properly sustained the exception of nonjoinder of indispensable parties. Plaintiff seeks to have only the interest of Noe in State Leases Nos. 340 and 341 returned to the State. If these leases are invalid as to Noe, they are invalid as to all other parties. Plaintiff has set forth with particularity the alleged illegal acquisition of Noe's and others' interests in these leases, including the subsequent assignments and present owners of the remainder. Certainly, all parties who have an interest in these leases are indispensable. C.C.P. Art. 641.[1] Plaintiff should be required to timely amend his petition to include as defendants the parties set forth in his pleadings.

EXCEPTION OF VENUE
Noe filed this exception based on the grounds that neither he nor the State Mineral Board is domiciled in the Parish of St. Mary. Attached to his exception is an affidavit that he had previously divested himself of any interest in the leases that pertained to immovable property located in St. Mary Parish. No other evidence was offered on this point. It is conceded that neither Mr. Noe nor the State Mineral Board is domiciled in the parish. However, the evidence is insufficient to show that Noe no longer owns mineral interests in St. Mary Parish. Under these circumstances the trial judge was correct in overruling the exception. C.C.P. Art. 80 sanctions *212 the institution of litigation in the parish where a claim is asserted against immovable property situated in that parish.
We now turn to the dilatory exceptions.

VAGUENESS
It will suffice here to say that the exception of vagueness was properly overruled. There is nothing vague about plaintiff's petition. Those allegations primarily complained of deal with assertions of fraud, breach of trust, conspiracy, etc., are conclusions of law of the pleader and require no answer.

FAILURE TO COMPLY WITH FORMAL REQUIREMENTS
Plaintiff's petition fails to state the domicile of the defendant, Noe, and must be amended to comply with C.C.P. Art. 891.

PREMATURITY AND UNAUTHORIZED USE OF SUMMARY PROCEEDINGS
For reasons hereinafter stated pertaining to improper cumulation of actions, it is not necessary for us to discuss this exception because in our opinion the State Mineral Board was improperly joined as a party defendant. The same is true with respect to the objection directed to the improper use of summary proceedings.

IMPROPER CUMULATION OF ACTIONS
In this suit plaintiff seeks recovery against Noe and also a writ of mandamus against the State Mineral Board to compel the Board to cancel and rescind its approval of assignment of the leases by Noe on the grounds of a defective title to the royalties involved. Plaintiff also seeks an injunction to prevent the Board from giving approval to the assignment and mortgage by Noe of his mineral interest in the property to the First National Bank of Commerce, New Orleans, Louisiana. Thus it can be seen that plaintiff seeks to invoke an ordinary proceeding against Noe and at the same time proceed in a summary manner against the State Mineral Board. This he cannot do. In summary proceedings it is necessary that all defenses be urged without the normal delays generally accorded to a defendant in an ordinary proceeding. In State v. Noe, 186 La. 102, 171 So. 708, 713, which involved a proceeding by mandamus to compel the Governor to cancel two mineral leases executed in favor of W. T. Burton, coupled with the claim that the plaintiff was the proper owner of the leases, the court stated:
"Thus it may be seen that plaintiff seeks to have the court order the cancellation of the lease contracts to Burton, first, physically by the Governor in a summary proceeding, and, second, judicially against Burton in an ordinary proceeding..."
* * * * * *
"We therefore conclude that the mandamus proceeding and the action of nullity, one being summary in its nature and requiring quick and immediate action, and the other being an ordinary action, requiring the ordinary legal delays, are inconsistent. The former is contrary to and precludes the latter. The exception of improper cumulation of actions was therefore properly sustained."
C.C.P. Article 464 provides that when the cumulation is improper the court may order separate trials for the actions or order the plaintiff to elect which action he shall proceed with and to amend his petition to delete therefrom all allegations relating to the action which he elects to discontinue. Under the Official Revision Comments the view is expressed that the majority of Louisiana cases have imposed the penalty of dismissal of the suit for improper cumulation of actions by or against plural parties.
*213 We are of the opinion that the plaintiff has no right to mandamus relief against the Mineral Board. C.C.P. Articles 3861-3863 permit a mandamus action in summary form to compel a public officer to perform a ministerial duty required of him by law. The State Mineral Board cannot be said to have failed to perform its ministerial duty until such time as plaintiff has successfully invalidated Noe's and others' interests in and to the royalties emanating from the subject leases. Mandamus does not lie to compel the performance of a discretionary act. State v. Louisiana Board of Barber Examiners, 208 So.2d 369 (1st La.App., 1968, writs refused). When and if the time comes for the State Mineral Board to amend its records to conform with a judgment relating to the proper ownership of the mineral interests and it declines or refuses to so comply, only then will the Board be subject to mandamus. There is no allegation that it has neglected to perform any requirements of law imposed on it. We, therefore, find that the trial judge properly dismissed the suit as to the State Mineral Board.
Accordingly, the judgment of the District Court overruling the exceptions of improper cumulation of actions and unauthorized use of summary proceedings is reversed and those exceptions are hereby sustained and for this reason the judgment dismissing the suit as to the State Mineral Board is affirmed. The judgment sustaining the exception of no right of action, insofar as we have found plaintiff's class action to be improper, is affirmed, reserving to plaintiff his right to proceed further herein as a taxpayer. The judgment overruling the exception of vagueness is affirmed. The judgment sustaining the exception of no cause of action is reversed and the exception is hereby overruled and for this reason, the judgment dismissing the suit as to James A. Noe is reversed. The judgment sustaining the exceptions of nonjoinder of indispensable parties and failure to comply with formal requirements of pleading is affirmed. This case is remanded to the trial court and plaintiff is given thirty days from the date this judgment becomes final to amend his petition to include as defendants all parties having an interest in State Leases Nos. 340 and 341 and to state the domicile of James A. Noe. Upon the failure of the plaintiff to so amend his petition, his suit shall be dismissed with prejudice.
The assessment of costs of this appeal and all other costs are to await a final determination on the merits.
Affirmed in part, reversed in part and remanded.
NOTES
[1] Art. 641. Compulsory joinder; indispensable parties

Indispensable parties to an action are those whose interests in the subject matter are so interrelated, and would be so directly affected by the judgment, that a complete and equitable adjudication of the controversy cannot be made unless they are joined in the action.
No adjudication of an action can be made unless all indispensable parties are joined therein.