383 So.2d 101 (1980)
Wayne D. JOINER, Plaintiff-Appellant,
v.
C. G. WEEKS et al., Defendants-Appellees.
No. 7511.
Court of Appeal of Louisiana, Third Circuit.
April 9, 1980.
Writ Refused May 30, 1980.
*102 Wayne D. Joiner, in pro. per.
Charles J. Yeager, Alexandria, for defendants-appellees.
Before CULPEPPER, DOMENGEAUX and FORET, JJ.
DOMENGEAUX, Judge.
Plaintiff, Wayne Joiner, is a former minister of the United Pentecostal Church. He filed this suit for defamation after learning that defendants recommended he be removed from the ministry of the United Pentecostal Church. This case is before us for the second time. The first review occurred when plaintiff appealed the sustaining of an exception to the trial court's subject matter jurisdiction. In an unpublished opinion dated April 5, 1978, we reversed the lower court ruling and held that it had jurisdiction to hear the case inasmuch as plaintiff had alleged defamation, a quasi-offense under La.C.C. Article 2315 which is reviewable by the District Courts of this state. We then remanded the case for further proceedings without reaching or deciding any other issues then raised. The case is now before us on plaintiff's appeal from the granting of defendants' motion for summary judgment.
The thirteen defendants are members and officers of the Louisiana District Board of the United Pentecostal Church. This Board is the official tribunal and governing body of the Louisiana Pentecostal Church. The Board met on December 10, 1976, to consider the merits of a complaint brought by another member of the Church alleging acts of misconduct by the plaintiff, who was then a minister of the Church. At the conclusion of the hearing, a resolution was adopted by the Board recommending that plaintiff be removed from the ministerial fellowship of the United Pentecostal Church. The text of that resolution, passed unanimously by the Board after Mr. Joiner had left the meeting reads as follows:
"WHEREAS, Rev. W. D. Joiner and Rev. Mrs. Ora C. Youngblood met with the Louisiana District Board of the United Pentecostal Church to hear and answer to complaints brought against Rev. W. D. Joiner by Rev. Mrs. Ora Cripps Youngblood and in the hearing of both parties it was noted by the Louisiana District Board that there were several instances where Rev. Joiner had done things in his business transactions with Sister Youngblood *103 and another party that were not right legally, morally, as a christian, and certainly not as a minister of the United Pentecostal Church and
Having reviewed all evidence in writing and personal testimony of Sister Ora Youngblood and Brother Wayne Joiner, it is the opinion of the Louisiana District Board that Sister Youngblood is under no further obligation to Brother Joiner relative to the property at Hotwells, furthermore, Sister Youngblood is under no obligation to pay additional tithing to Brother Joiner. It is our recommendation that Brother Joiner pursue this matter no farther in the courts of the land, or before this board and
Further, the District Board requests that Brother Wayne Joiner apologize to Sister Youngblood for this action and the use of her good name and integrity in cashing the check from a Mr. Jones and appropriating these funds to his personal use and
Further the District Board requests that Brother Joiner apologize to the District Superintendent, District Secretary, and this Board for his statements of prejudgment relative to this case and
WHEREAS, Rev. Joiner did not make any statement of apologies relative to the Louisiana District Board's requirements in their decision pertaining to Sister Youngblood's complaints, and his action in the Board Meeting and
WHEREAS, Rev. Joiner was very disrespectful to the District Superintendent and the District Board, and when asked by the District Superintendent to remain after the other parties had left to be questioned relative to other matters of a very serious nature (marital problems), he left the Board Meeting and premises with no explanation and in a spirit and action of total disregard to the request of the District Board
THEREFORE, BE IT RESOLVED that in accordance to Judicial Procedure; Article 111, Section 5, paragraph 5, we recommend that Rev. W. D. Joiner be dropped from the Ministerial fellowship of the United Pentecostal Church, relative to his ministerial conduct."[1]
As a result of this resolution by the Board, plaintiff sued the thirteen members of the Board, alleging defamation as his principal cause of action, and seeking damages. The defendants are: C. G. Weeks (the District Superintendent)[2], J. R. Weidner (the District Secretary), G. F. Simpkins, M. K. James, E. W. Reeves, T. D. Cardwell, W. C. Jackson, W. Ashworth, G. A. Mangum, B. L. White, G. E. Chance, J. T. Miller, and L. J. McDaniel. Additionally, plaintiff has sued five of these defendantsWeeks, Weidner, James, Chance, and McDaniel for allegedly uttering the following statements (claimed by plaintiff to be defamatory) during the meeting:[3]
"By Weeks: `It seems to me that you have played a con game with Mrs. Youngblood and that is what I called *104 you is a Con-Man.'; `You have crooked ways.'; `Bro. Joiner I question your integrity'; ['] I imagine you called her Sister when you was trying to get money from her [`].
By Weidner: `Bro. Weeks could have pulled your ministerial card a long time ago, right here in one of the conference room.'
By James: `If Joiner come to his church that he pastored, that he would not even expect his church people to as much as raise their hands, if they knew what he knew about Joiner and his family.'
By Chance: `The Civil Petition that Joiner filed on Ora Cripps Youngblood, et al, is not worth a dime and is not worth the paper that it is wrote on.'
By McDaniel: `A person can make an agreement one day and turn around the next day and break that agreement and that is alright, as I have done that myself many times.'; `I clearly understand what the agreement was [between plaintiff and Mrs. Youngblood].'"
In addition to the defamation charges, plaintiff has also complained that the procedure followed by the Board was improper and that his dismissal from the ministry of the Church has deprived him of his ministerial livelihood.
Our principal concern on this appeal is determining whether the trial court was correct in granting a summary judgment. The rules governing the procedure to be followed when considering the merits of a motion for summary judgment are found in La.C.C.P. Articles 966 and 967:
"Art. 966. Motion for summary judgment; procedure
The plaintiff or defendant in the principal or any incidental action, with or without supporting affidavits, may move for a summary judgment in his favor for all or part of the relief for which he has prayed. The plaintiff's motion may be made at any time after the answer has been filed. The defendant's motion may be made at any time.
The motion for summary judgment shall be served at least ten days before the time specified for the hearing. The adverse party may serve opposing affidavits prior to the day of the hearing. The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that mover is entitled to judgment as a matter of law."
"Art. 967. Same; affidavits
Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein. Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. The court may permit affidavits to be supplemented or opposed by depositions, answers to interrogatories, or by further affidavits.
When a motion for summary judgment is made and supported as provided above, an adverse party may not rest on the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided above, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be rendered against him.
If it appears from the affidavits of a party opposing the motion that for reasons stated he cannot present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.
If it appears to the satisfaction of the court at any time that any of the affidavits presented pursuant to this article are presented in bad faith or solely for the purposes of delay, the court immediately shall order the party employing them to *105 pay to the other party the amount of the reasonable expenses which the filing of the affidavits caused him to incur, including reasonable attorney's fees. Any offending party or attorney may be adjudged guilty of contempt."
In support of the motion for summary judgment, each defendant filed this affidavit:
"[Defendant] is a member of the District Board of the United Pentecostal Church of Louisiana; that one of his most important duties as a member of the District Board is the disciplining of ministers who fail to conform to the spiritual standards required of ministers by the United Pentecostal Church; that in the recommendation of disfellowship of Wayne D. Joiner from the Fellowship of Ministers made by the Louisiana District Board on December 10, 1976, he acted in good faith and with no malice to the aforesaid Wayne D. Joiner."
The affidavits provided by the defendants complied with all of the requirements of Article 967 by affirmatively showing that the facts set forth in the affidavits were within the personal knowledge of the affiants and by establishing their competence to testify to the material facts at issue. Benoit v. Burger Chef Systems of Lafayette, Inc., 257 So.2d 439 (La.App. 1st Cir. 1972). In fact, Joiner does not dispute the first two averments contained in the defendants' affidavits. He objects only to the last averment, that the defendants acted in good faith and without malice.
In opposition to the motion for summary judgment, plaintiff filed this affidavit:
"That he is the Plaintiff in the above Captioned matter. That the allegations in the Civil Petition and the amendments are true and correct to the best of his knowledge, belief and information. That Publication, i. e. communication to some other person other that one defamed was committed, by certain defendant. That certain statements made by certain defendant was false. That Malice was shown by certain defendant, toward Reverend Wayne D. Joiner. That acts by defendant has resulted in injury. That Plaintiff Joiner has not received income from ministering since December 10, 1976."
After a hearing on the motion was held, the trial court held as follows:
"Plaintiff in this case has failed to follow the mandatory provisions of Article 967. The affidavit of plaintiff `failed to "show affirmatively" that the affiant was competent to testify to the matters stated therein. The fact that it is stated as a conclusion that the affiant has personal knowledge of the facts will not suffice. The facts as set forth in the affidavit must show that he has such knowledge.' [Barnes v. Sun Oil Co., 362 So.2d 761 (La.1978)]. The affidavit filed by plaintiff is inadequate to establish the existence of a genuine issue as to a material fact."
For the above reasons given by the trial court, and for other reasons explained more fully below, the summary judgment is affirmed. The only genuine issues involved are legal.
To decide this case we must balance the right of an individual to protect his good name and reputation against the right of a religious organization to conduct its affairs free of civil court scrutiny or intrusion. The balance we strike favors the religious organization since we recognize that a qualified privilege exists which protects the actions of the Board and the statements made by the Board members during the December 10, 1976, meeting.
Our brothers on the Second Circuit succinctly stated the law relative to qualified privileges in Carter v. Catfish Cabin, 316 So.2d 517 (La.App. 2nd Cir. 1975):
"The essential elements of a conditional privilege are described in Madison v. Bolton,. . . [234 La. 997, 102 So.2d 433 (1958)] as `good faith, an interest to be upheld and a statement limited in scope to this purpose, a proper occasion, and publication in the proper manner and to proper parties only.' In Toomer v. *106 Breaux, . . . [146 So.2d 723 (La. App. 3rd Cir. 1962)]. it was held that a conditional privilege is applicable `if the communication is made (a) in good faith, (b) on any subject matter in which the person communicating has an interest or in reference to which he has a duty, (c) to a person having a corresponding interest or duty. This privilege arises from the social necessity of permitting full and unrestricted communication concerning a matter in which the parties have an interest or duty, without inhibiting free communication in such instances by the fear that the communicating party will be held liable in damages if the good faith communication later turns out to be inaccurate.'"
The conditional or qualified privilege has been recognized and applied in a variety of circumstances in Louisiana, including one instance in a religious or ecclesiastical setting, Gaillot v. Sauvageau, 154 So.2d 515 (La.App. 4th Cir. 1963). We feel that the privilege applies here because all the essential elements described in Madison v. Bolton are present.
The defendants all deposed that their actions at the December 10, 1976 meeting were conducted in good faith and without malice. Defendants spoke from personal knowledge and are competent to testify to that fact. Plaintiff, in opposition to these affidavits, merely reasserted the allegations of his petition that the defendants acted in bad faith and with malice. Yet he did not establish his competence to testify to the factual issue of whether defendants acted in bad faith and with malice. On the contrary, plaintiff admitted that the Board was vested with the authority to recommend the dismissal of any minister that the Board found to be spiritually unfit. This is all that the Board did. Its adopted resolution served as a notice to all concerned of the Board's recommendation and the reasons therefor. No suggestion is made that the resolution was circulated to anyone not having a legitimate interest in the Board's proceedings.
Attendance at this meeting was limited to the thirteen Board members, plaintiff, the complainant, Mrs. Ora Cripps Youngblood, and her two witnesses. Any potentially damaging comments made by the Board members during this meeting were heard only by those in attendance who must surely have been aware of the nature of the proceedings.
Plaintiff's complaint against the defendant Board members is, in reality, an attempt by plaintiff to appeal the decision of the Board that he is spiritually unfit to continue as a minister in the United Pentecostal Church. The United States Supreme Court has declared it is impermissible, as a violation of the First Amendment of the United States Constitution for civil courts to investigate the propriety of ecclesiastical proceedings in disciplinary matters. Serbian Eastern Orthodox Diocese for the United States of America and Canada, et al. v. Milivojevich, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976).
It would be ludicrous to believe that the constitutional principles upheld by the United States Supreme Court in Milivojevich could be satisfied by allowing this intrusion into the disciplinary proceedings of an ecclesiastical board. To allow defamation suits to be litigated to the fullest extent against members of a religious board who are merely discharging the duty which has been entrusted to them by their church could have a potentially chilling effect on the performance of those duties and could very well inhibit the free communication of important ideas and candid opinions. Our state Supreme Court recognized this danger to the free exercise of First Amendment rights in Mashburn v. Collin, 355 So.2d 879 (La.1977).
Mashburn is in many important respects similar to the case under review and supports our affirmation of the summary judgment. In Mashburn, a restaurant critic was sued by a restaurateur after the critic published a scathing review of the restaurant's cuisine. The trial judge granted the critic's motion for summary judgment. The Court of Appeal reversed the trial court. The *107 Supreme Court reversed the Court of Appeal and reinstated the trial court's judgment. After reciting at length the history of the scope of protection afforded certain First Amendment rights, the Supreme Court held in favor of the critic.
The Court considered the deposition filed by the critic wherein he said that the review expressed his careful, honest opinion and reflected no ill will or desire to harm the restaurant or its owners. The Court found that his deposition satisfactorily established the absence of knowing or reckless falsity[4] on his part. The affidavit filed by the restaurant owner neither related to the information contained in the column nor contradicted the critic's deposition.
The Court found that the reasonable inferences favorable to the restaurant owner which may have been drawn from the facts before the Court did not show that a reasonable trier of fact could find by clear and convincing evidence that the restaurant owner had been defamed with knowing or reckless falsity by the defendant.
We reach the same result here as the Court did in Mashburnreasonable inferences favorable to Joiner do not show that a reasonable trier of fact could find by clear and convincing evidence that the Board or its members acted or spoke with malice toward the plaintiff.
Although Mashburn was not concerned with the protection of religious disciplinary proceedings via a qualified privilege, it is important and useful here because of its approval of summary proceedings in a defamation suit:
"Summary adjudication may be thought of as a useful procedural tool and an effective screening device for avoiding the unnecessary harassment of defendants by unmeritorious actions which threaten the free exercise of rights of speech and press."
355 So.2d at 891.
This rationale adopted by the Supreme Court in striving to protect the free exercise of rights of speech and press works just as effectively here to protect the free exercise of religion, another First Amendment right which has received renewed protection through the Milivojevich case.
Having found that defendants' motion for summary judgment is well-supported by their affidavits, and that plaintiff's affidavit fails to raise a genuine issue of material fact, we now find that defendants are entitled to judgment as a matter of law.
Finally, we consider plaintiff's complaint of numerous irregularities in the December 10, 1976, proceedings of the Board and his complaint that he has been wrongfully deprived of his ministerial income. Milivojevich teaches us that we are not to inquire into the propriety of religious disciplinary proceedings. It also instructs us that we are required to accept certain consequences as incidental effects of these ecclesiastical determinations not subject to judicial abrogation. Therefore, this court cannot inquire into the merits of plaintiff's claim that he has been wrongfully disfellowshipped due to procedural irregularities and his loss of ministerial income must be accepted as a necessary consequence of his dismissal from the ministry.
For the above and foregoing reasons the judgment of the District Court dismissing plaintiff's claim against all defendants is affirmed. Costs are assessed against the plaintiff, Wayne Joiner.
AFFIRMED.
NOTES
[1] All quotes, unless they are from a source other than the record, are quoted precisely as they appear in the record. No corrections have been made and no effort has been taken to alert the reader to grammatical or other errors by using the customary designation "[sic]".
[2] It appears from the record that C. G. Weeks expired during the pendency of this action.
[3] Plaintiff has sued Weidner and Chance on account of other statements allegedly made at some unspecified time before the meeting as follows:

"By Weidner: (to the complainant, Ora Cripps Youngblood): `You should have consulted us before you got Joiner to Co-Pastor with you. That we have been after Joiner for a long time.'
By Chance: (when Mrs. Youngblood allegedly tried to settle the suit with plaintiff): `That he did not think that Mrs. Youngblood should offer Joiner anything concerning the Civil Petition, as the Petition was not any thing.'"
We find these statements to be wholly lacking in defamatory content. These words simply are not capable of a defamatory meaning and cannot form the basis for a defamation suit. See Brown v. News-World Publishing Corp., 245 So.2d 430 (La.App. 2nd Cir. 1971) for the test used to determine whether a statement is defamatory or not. See also Kihneman v. Humble Oil & Refining Co., 312 F.Supp. 34 (E.D.La.1970) which supports the view that "whether the words used, are capable of a defamatory meaning" is a question of law for determination by the court, not a jury.
[4] The standard applied in Mashburnknowing or reckless falsityis not the same here. The standard here is generally stated as "malice" or "ill will." The difference in terminology is not critical since the underlying reasons for granting the summary judgment are the same in both cases.