701 So.2d 1354 (1997)
Father Terence Patrick HAYDEN
v.
Archbishop Francis B. SCHULTE, et al.
No. 97-CA-0422.
Court of Appeal of Louisiana, Fourth Circuit.
October 29, 1997.
*1355 Don M. Richard, Denechaud and Denechaud, New Orleans, and Willam B. Ball, Ball, Skelly, Murren & Connell, Harrisburg, PA, for Defendants/Appellees.
Mary Ann McGrath Swaim, Glen Patrick McGrath, New Orleans, for Plaintiff/Appellant.
Before BYRNES, JONES and WALTZER, JJ.
BYRNES, Judge.
Plaintiff-appellant, Father Terence Patrick Hayden, sued the defendants-appellees, Archbishop Francis B. Schulte, and the Roman Catholic Church of the Archdiocese of New Orleans, essentially for damage to his reputation and loss of employment along with subsidiary allegations concerning an illegal lie-detector test.
Defendants urged an exception of lack of subject matter jurisdiction, which was originally denied but was granted when the defendants moved that it be reconsidered and briefed the matter more extensively. Plaintiff's motion for a new trial was then denied. Plaintiff appeals the granting of defendants' exception dismissing his claim and the denial of his motion for a new trial. We reverse.
This case boils down to two main issues as expressed in Father Hayden's petition which is virtually all we have to go on at this stage of the proceedings as Father Hayden has offered little evidence and the defendants have offered none:
(1) A claim for damages arising out of defamation of his character.
*1356 (2) A claim for damages arising out of his failure to become a full time Navy chaplain, compounded by damages arising out of Father Hayden's relinquishment of his status as a chaplain in the Navy reserves. Father Hayden also makes allegations concerning being required to undergo an illegal lie-detector test which we will treat as subsidiary to this employment claim.

I. CLAIM FOR DEFAMATION OF CHARACTER
In paragraph "VII" of Father Hayden's petition he alleges that:
Throughout the process of the Archbishop's "investigation", interviews about Father Hayden and the accusations against him were given to the media and to the newspaper by Church officials, including the officials who were the triers of fact in the "investigation" initiated in the abovesaid church meeting. It became clear from the comments of these representatives of the Archbishop and the Archdiocese that the charges of "horseplay" were interpreted to be charges of a sexual nature. [Emphasis added.]
The petition goes on to explain that the alleged sexual activity involved an alleged "child victim," i.e., Father Hayden is complaining that the damage to his reputation arose out of the defendants' unfounded allegations and innuendos of child sexual abuse. Society does not view child molestation as a matter of religious doctrine, as distinguished from, say, the procedures within the Church necessary to atone for such a sin. Child sexual abuse is anathema to society in general, even to atheists. It is prohibited by secular laws. The public has an interest in matters of child molestation. Therefore, where child molestation is at issue, it cannot be considered just an internal matter of Church discipline or administration. Child molestation is distinguishable from those cases where religious figures claim that their reputations were damaged because they were found to be poor administrators or where their private conduct did not comport with church standards, but the issue was not one of the violation of secular criminal laws. The Church cannot appropriate a matter with secular criminal implications by making it simultaneously a matter of internal Church policy and discipline.
The Church has an interest in not having its reputation damaged by incidents of child molestation. But that interest is no greater than that of any other organization relying on its public image and the Church is entitled to no special preferential legal protection of its public image, i.e., the Church is no more entitled to damage reputations outside of its internal operations in order to protect its public image from what is essentially a secular non-religious matter than is any other organization. And the Church's interest in its public image is certainly legally subordinate to the public's interest in the matter of child molestation. It is, therefore, clear that Father Hayden's allegations of the dissemination of defamatory non-religious information about him to the media states a claim within the subject matter jurisdiction of the courts of this state. But this is in no way intended as an expression of opinion by this Court concerning the merits of Father Hayden's claim.
In McManus v. Taylor, 521 So.2d 449, 451 (La.App. 4 Cir.1988) which is the strongest authority supporting defendants' position, this Court found that it lacked subject jurisdiction over a defamation claim against a church asserted by a minister of that church, quoting from and following Joiner v. Weeks, 383 So.2d 101 (La.App. 3 Cir.1980), writ denied, 385 So.2d 257 (La.1980):
To allow defamation suits to be litigated to the fullest extent against members of a religious board who are merely discharging the duty entrusted to them by the church could have potentially chilling effect on the performance of those duties ...
However, there is nothing in the facts as reported in McManus to indicate that the alleged defamation had been intentionally disseminated outside the church to news organizations as Father Hayden has alleged in his petition. It is one thing to say that churches must be free of governmental interference to conduct matters of internal discipline and organization, even when those matters touch upon the reputations of those *1357 effected. It is quite another to say that churches have the unfettered right to make unsubstantiated statements of an essentially secular nature to the media destructive of a priest's character as we read Father Hayden's petition alleges occurred in this case. In Joiner v. Weeks, 383 So.2d at 106 the court noted that:
No suggestion is made that the resolution was circulated to anyone not having a legitimate interest in the Board's proceedings.... Any potentially damaging comments made by the Board members during this meeting were heard only by those in attendance who must surely have been aware of the nature of the proceedings.
The internal nature of the church proceedings in Joiner is very different from the allegations in Father Hayden's petition, unrefuted at this time, of dissemination through the media of defamatory information about him.
In McManus this Court also cited Louisiana District Council of Assembly of God v. Victory Temple Assembly, 444 So.2d 640 (La. App. 5 Cir.1983), writ denied, 449 So.2d 1343 (La.1984), which stated at 444 So.2d 642 that: "If the controversy is purely religious and does not concern property, courts should not become involved." Child sexual abuse is not a purely religious matter.
Father Hayden may be unable to prove his allegation of defamation through the news media. However, we cannot say that this Court lacks subject matter jurisdiction over such an allegation.

II. CLAIM FOR DAMAGE TO EMPLOYMENT
In granting defendants exception and dismissing Father Hayden's claims, the trial court found that:
Archbishop Schulte's investigation and discipline of Father Hayden are within the authority of the Roman Catholic Church. The institution of the Independent Review Board and recommendation to the Archdiocese deal with the ability of Father Hayden to serve as a priest and/or chaplain. Civil courts do not have the power to interfere in the appointment and removal of a minister. Inherent in the above is the right of a church to determine the qualifications of its clergymen and whether the clergymen meet those standards. In the instant case, the Archbishop performed those duties and this Court must not interfere in that decision.
On October 18, 1994 Archbishop Schulte wrote a letter to Archbishop Joseph T. Dimino, D.D. of the Archdiocese for the Military Services concerning Father Hayden's request for an endorsement for active service as a chaplain in the U.S. Navy. Archbishop Schulte noted that Father Hayden had served as a priest in New Orleans since 1977 and that he was "a priest in good standing and does enjoy the faculties of the archdiocese." Archbishop Schulte's letter states that in 1993, "Some accusations of questionable behavior and some complaints about his ministry were brought ..." These accusations were reviewed and Archbishop Schulte's letter points out that, "On the basis of this review, Father Hayden has continued to have the faculties of the archdiocese." Father Hayden also submitted voluntarily to psychological evaluation as well as a program called "Ministry to Ministers" while on sabatical. Upon return from sabatical Father Hayden resumed his "priestly faculties."
Archbishop Schulte's letter notes that the Independent Review Board[1] "basically accepted *1358 and affirmed the previous actions." The letter concludes with the following paragraphs:
The Independent Review Board, however, did request that Father Hayden undergo another evaluation. This evaluation was arranged at a local facility. Father Hayden participated, but only in part of the evaluation.
Before this evaluation, Father Hayden was advised that he could voluntarily decline to take any of the tests which he did not wish to take. One of the tests was the "Penile Plethysmography," a fact which I had not known before directing Father Hayden to this evaluation center. I would have expected him to decline this particular test. After the first day of evaluation, Father insisted that he would take no further evaluations. When I requested the results of the evaluation which he had taken, he refused to ask the evaluation agency to provide them. He has stated that the prior evaluations ought to be enough and that this partial evaluation would not be helpful to him. [Emphasis added.] I trust that this information will assist you in responding to the request of Father Hayden for active duty service as a chaplain. I give him my permission to serve, if he is accepted by the Military Archdiocese.
Father Hayden complains that he was required to submit to a "Penile Plethysmography" which he characterizes as an illegal lie detector test. However, as may be seen by reference to the letter from Archbishop Schulte offered by Father Hayden as an exhibit in connection with his opposition to defendants' exception, Archbishop Schulte did not require this test. Furthermore the consent form provided by the testing facility offers the option of using alternative means of evaluation "including confidential interviewing and psychological testing." The consent form also stated that: "During any stage of my assessment, I can withdraw my consent to participate in the procedure."
Therefore, we find no merit in Father Hayden's contention that he was required to submit to an illegal lie detector test.
The consent form also contains the following language:
"The benefits of this assessment include specification of the physiological nature of my sexual addiction ..."
Father Hayden contends that his signature on a consent form containing such language would be construed as an admission by him of sexual addiction.
Father Hayden contends that because the Independent Review Board is composed of non-church members, its actions are not protected by the First and Fourteenth Amendments. However, it appears that the Independent Review Board was established pursuant to Archdiocese of New Orleans Policy Concerning Neglect or Abuse of Minors, and is part of the internal rules for Church operations regardless of the fact that it is required to be composed of non-Church members. The Archdiocese of New Orleans Policy Concerning Neglect or Abuse of Minors takes cognizance of the differences between the Church's relationship between itself and its priests as opposed to laymen. It is a matter of internal church discipline and governance, a matter of the church's internal evaluation of the qualifications of its clergy.
In McManus, 521 So.2d at 450 this Court also took cognizance of the U.S. Supreme Court decision in Serbian Eastern Orthodox Diocese for U.S. of America and Canada v. Milivojevich, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976). In Milivojevich the Illinois Supreme Court had held that the decisions of church governing authorities were arbitrary because they were not consistent with the church's own laws and procedures. The U.S. Supreme Court reversed finding it to be a matter of internal church governance.
The defendants contention that this is all a matter of internal Church policy beyond the cognizance of the secular courts is based primarily on numerous citations to the Canon Law of the Church.
This Court is loath to venture into the murky depths of Canon Law and does not intend to rule on questions that are truly matters of Church governance based on ecclesiastical law. Such matters are not normally the province of the secular court system. *1359 However, it is not necessary that we confront the issue at this time because we are unable to take cognizance of the Canon Law cited by the defendants even if we were inclined to do so. The defendants many citations to Canon Law are not supported in the record. We find no evidence of the Canon Law in the record and this Court finds no authority permitting judicial notice of the provisions of Canon Law cited by the defendants.
In any event, regardless of the likelihood that the defendants will ultimately be able to prove that the question of Father Hayden's assignment as a Navy chaplain is an internal Church matter, we are still left with the defamation question as alleged by the plaintiff in his petition.[2]
The defendants offered no evidence in support of their exception although the burden was upon them to do so. The ruling of the trial court in this matter is very much analogous to the erroneous ruling which was overturned on appeal in Morrison v. H.B. Mitchell Const Co.,[3] 369 So.2d 1102, 1103 (La.App. 1 Cir.1979):
At the hearing on the declinatory exception of lack of subject matter jurisdiction, neither plaintiff nor defendants offered any evidence in support of their respective positions. The court, therefore, was restricted to the allegations of the petition, which for purposes of the exception are to be accepted as true. State ex rel. Brenner v. Noe, 186 La. 102, 171 So. 708 (1936).
Although plaintiff's allegations were the only evidence before the court, the judge a quo in his judgment sustaining the exception of lack of subject matter jurisdiction made the following statement in explanation of his ruling:
"The general rule is that a state workmen's compensation statute is inapplicable even though the accident occurred within that state, where neither the employee nor the employer resided in the state, where no part of the employer's business was localized therein, and where the employment therein was only of a temporary character."
Without expressing an opinion on the validity of the above rule, we note that the record before us reveals no basis on which the court below could have concluded that Mitchell Construction had no business localized in this state or that plaintiff's work here was temporary. Therefore, these findings of fact must be disregarded. Apparently the judge a quo mistakenly relied upon unproven assertions made in defendants' brief.
Lack of jurisdiction of the subject matter does not appear on the face of the plaintiff's petition. [Footnote omitted.] Therefore, the onus was on the defendants to offer evidence in support of their exception. C.C.P. art. 930. Defendants having failed to do so, the exception to jurisdiction ratione materiae must be overruled. [Emphasis added.]
The only evidence in this case was that offered by the plaintiff in the form of his petition and exhibits annexed thereto as well as exhibits annexed to his opposition to the defendants' exception. None of plaintiff's exhibits negate his assertion that defendants disseminated defamatory information about him to the news media. The defendants offered nothing to disprove plaintiff's allegation that the defendants had done so. Therefore, the language highlighted in the above quote from Morrison is applicable to this case, and the defendants' exception of lack of *1360 subject matter jurisdiction must be overruled.
For the foregoing reasons the judgment of the trial court is reversed and the case is remanded for further proceedings consistent with this opinion.
REVERSED AND REMANDED.
JONES, J., concurs.
JONES, Judge, concurring.
I concur in the result. See Gorman v. Swaggart, 524 So.2d 915 (La.App. 4 Cir. 1988).
NOTES
[1] There is considerable discussion in brief by both plaintiff and defendants of this "Independent Review Board." However, although no party disputes its existence, and there is reference to it in exhibits annexed to plaintiffs petition and memoranda below, there is no actual evidence in the record of what it actually is and does. It appears safe to assume that at least one of its functions is to review allegations of child molestation by Church personnel, but there is no evidence of how and in what manner this is done. Such are not matters that can be establish by argument without evidence. Argument, no matter how skillful, is not evidence.

Annexed to Father Hayden's reply brief to this Court is a purported copy of an article that allegedly appeared in the Times-Picayune concerning the establishment of the review board. Also annexed to the same brief are purported excerpts from a deposition of one of the defendants, Archbishop Francis B. Schulte. It does not appear that either were presented to the lower court. Neither can be considered by this Court for the first time on appeal.
[2] The defendants' arguments are characterized by the following found in their brief:

The communication by one Archbishop of the Church to another Archbishop of the Church (i.e., Archbishop Schulte's letter of October 18, 1994 to the Archbishop for Military Services, USA), in the matter of the assignment of a priest, is nothing other than an internal church matter.
If such internal communications were all that Father Hayden alleged, the defendants' case might have merit. However, nowhere do the defendants address the question of the dissemination of defamatory information to the news media as alleged by Father Hayden.
[3] Although Morrison is a worker's compensation case, its discussion of the burden of proof on an exception of lack of subject matter jurisdiction is applicable to he instant case.