No. 86-547

IN THE SUPREME COURT OF THE STATE OF MONTANA

1987

RAY RASMUSSEN and PAULINE RASMUSSEN,

Plaintiffs and Appellants,

-vs-

LARRY C. BENNETT, CLIFFORD HARDEN,
DANIEL P. JAMES, DONALD WHITING
and NELSON DAVES,

Defendants and Respondents.

APPEAL FROM: District Court of the Ninth Judicial District,
In and for the County of Toole,
The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Hash, O'Brien & Bartlett; James C. Bartlett,
Kalispell, Montana

For Respondent:

Alexander & Baucus; John P. Paul, Great Falls,
Montana

Submitted on briefs: June 11, 1987

Decided: August 17, 1987

Filed: AUG 17 1987

*Ethel M. Harrison*

Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

Plaintiffs Ray and Pauline Rasmussen appeal the September 9, 1986, order of the Ninth Judicial District Court, Toole County, granting summary judgment in favor of defendants. We affirm.

Ray Rasmussen was a member of the Jehovah's Witnesses Church. Ray and his wife, Violet, were associated with the Polson, Montana, congregation in 1967 and 1968. In the spring of 1968, Ray learned that Violet had committed adultery in 1967. In July of 1968, Ray forgave Violet for her act of adultery in accordance with Church doctrine.

In the spring of 1969, Ray learned that Violet had committed other acts of adultery prior to the time he forgave her. In 1969, it would appear the doctrine of Jehovah's Witnesses, as determined by the Watchtower Bible and Tract Society, was that forgiveness of an act of adultery forgives all prior acts of adultery whether known or unknown. Such doctrine of Jehovah's Witnesses further provides that a Church member is scripturally free to remarry only if his spouse commits adultery and is not forgiven. If a Church member remarries but is not scripturally free to do so he is considered to be living in adultery and may be expelled from the Church.

In June of 1969, Ray moved to Shelby and became associated with the Shelby congregation of Jehovah's Witnesses. On July 8, 1969, Ray filed a petition for divorce in Liberty County, Montana, alleging mental cruelty on the part of Violet. During that same month, Ray met Pauline Ferris, and Ray began discussions with Church members regarding his scriptural freedom to remarry. On October 9,

1969, decree was entered by the District Court dissolving the marriage of Ray and Violet.

On October 10, 1969, defendant Donald Whiting, on behalf of the Polson congregation, wrote Ray a letter informing him there were doubts as to his scriptural freedom to remarry. Despite the doubts raised in the letter, Ray married Pauline on October 18, 1969. The marriage was performed by one of the defendants herein, Daniel James, who was a member of the Jehovah's Witnesses Shelby congregational committee.

Following Ray's remarriage, the Polson committee continued to investigate the "other" acts of adultery committed by Violet, Ray's former wife. On December 30, 1969, Ray wrote the Polson committee informing them he had been told he was free to remarry and that there seemed to be a misunderstanding on the matter. In February of 1970, defendant Larry Bennett moved to Shelby to begin his duties as overseer of the Shelby congregation. Bennett questioned Ray's scriptural freedom to remarry. The Shelby congregational committee wrote to the Watchtower Bible and Tract Society, the governing body of the Church, for guidance on the matter.

By letter dated March 12, 1970, the Watchtower Society responded to the inquiry and stated that Ray was not scripturally free to remarry and disfellowship appeared to be the proper course of action. On March 18, 1970, Ray and Pauline Rasmussen were disfellowshipped from the Jehovah's Witnesses. At the next meeting of the Shelby congregation the congregation was informed that Ray and Pauline had been disfellowshipped for "conduct unbecoming Christians," and that "We got the filth cleaned out of the congregation, now we will have God's spirit." Rasmussens were thereafter shunned by Church members in accordance with Church doctrine.

3

On November 26, 1971, Rasmussens filed a defamation suit alleging defendants had wrongfully disfellowshipped Rasmussens from the Jehovah's Witnesses. The initial trial date of December 3, 1974, was vacated. The district judge was subsequently disqualified, plaintiffs' original counsel withdrew, and the case did not proceed for several years. Defendants' motion to dismiss for failure to prosecute was denied, and pre-trial conference finally was held on May 3, 1982.

The parties agreed to draft a letter to the Watchtower Society regarding the question: Would forgiveness of one act of adultery forgive all other acts of adultery, know or unknown, committed prior to the time of forgiveness? The Watchtower Society responded in the affirmative, that in 1969 the position of the Society was that an act of forgiveness for one act of adultery forgave all previous acts of adultery and the forgiving spouse was not scripturally free to remarry. Despite this response, Rasmussens proceeded with the litigation and requested a trial date.

Defendants filed a motion for summary judgment which was granted March 24, 1983. Rasmussens appealed and this Court reversed the summary judgment because the District Court granted the motion without having before it depositions of four defendants. Rasmussen v. Bennett (Mont. 1983), 672 P.2d 278, 40 St.Rep. 1849. On remand the district judge recused himself from the case. Following assumption by the new district judge, defendants again moved for summary judgment. The District Court entered summary judgment in favor of defendants on September 9, 1986. Rasmussens appeal and raise the following issues:

(1) Whether defendants are liable under state law for libel and slander.

4

(2) Whether defendants can properly claim a privilege or a qualified privilege on religious grounds.

(3) Whether the defense of truth, based on religious grounds, is applicable.

(4) Whether there are material questions of fact precluding summary judgment.

Rasmussens contend defendants are liable under state law for defamation. The following statutes are applicable.

> 27-1-802. Libel defined. Libel is a false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye which exposes any person to hatred, contempt, ridicule, or obloquy or which causes him to be shunned or avoided or which has a tendency to injure him in his occupation.
>
> 27-1-803. Slander defined. Slander is a false and unprivileged publication other than libel which:
>
> (1) charges any person with crime or with having been indicted, convicted, or punished for crime;
>
> (2) imputes in him the present existence of an infectious, contagious, or loathsome disease;
>
> (3) tends directly to injure him in respect to his office, profession, trade, or business, either by imputing to him general disqualification in those respects which the office or other occupation peculiarly requires or by imputing something with reference to his office, profession, trade, or business that has a natural tendency to lessen its profit;
>
> (4) imputes to him impotence or want of chastity; or

(5) by natural consequence causes actual damage.

27-1-804.    What communications are privileged.  A privileged publication is one made:

(1) in the proper discharge of an official duty;

(2) in any legislative or judicial proceeding or in any other official proceeding authorized by law;

(3) in a communication without malice to a person interested therein by one who is also interested or by one who stands in such relation to the person interested as to afford a reasonable ground for supposing the motive for the communication innocent or who is requested by the person interested to give the information;

(4) by a fair and true report without malice for a judicial, legislative, or other public official proceeding or of anything said in the course thereof.

Rasmussens assert that defendants' statements that the Rasmussens were living in adultery and had been disfellowshipped for conduct unbecoming a Christian were defamatory.  Defendants contend the communications were privileged and true according to Church doctrine.

First, we examine whether defendants' communications were privileged.  Whether or not the communication is privileged is a question for the court, not the jury, where the facts are not in dispute.  Griffin v. Opinion Publishing Co. (1943), 114 Mont. 502, 138 P.2d 580.  Rasmussens claim the existence of factual disputes and that the District Court erred in finding defendants' communications protected by privilege.

6

We find the defendants' statements to be privileged under § 27-1-804(3), MCA. It is firmly established that statements of church members made in the course of disciplinary or expulsion proceedings, in the absence of malice, are protected by a qualified privilege. 50 Am.Jur.2d, Libel and Slander, § 209. There is no dispute here that the statements complained of were delivered at the Jehovah's Witnesses congregational gathering in Shelby. The statements of disfellowship made by Churchleader Bennett were made to other Church members interested in the matter.

Rasmussens contend the congregational gathering included non-Church members thus the statements exceeded the scope of the privilege. We disagree. The incidental communication to non-Church members attending the service does not eliminate the privilege. See Redgate v. Roush (Kan. 1900), 59 P. 1050. Having established a qualified privilege on the part of defendants, the burden is upon Rasmussens to show the privilege has been abused by excessive publication, by use of the occasion for an improper purpose, or by lack of belief or grounds for belief in the truth of what was said. Law of Torts, 4th Ed., Prosser, § 115, p. 796. Rasmusssens allege malice on the part of defendants. Rasmussens contend defendants told them it was permissible under Church doctrine for Rasmussens to remarry, but defendants later changed their minds.

Defendants point out that Rasmussen received a letter prior to his remarriage which expressed doubts as to his scriptural freedom to remarry. To prove malice, Rasmussens must show that defendants' statements were made "with knowledge that it was false or with reckless disregard of whether it was false or not." Williams v. Pasma (1982), 202 Mont. 66, 656 P.2d 212; New York Times v. Sullivan (1964), 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686.

Rasmussens cite no evidence in this case which would raise a question of malice on the part of defendants. Defendants have asserted truth as a defense. Defendants disfellowshipped Rasmussens in accordance with Church doctrine. The Watchtower Society confirmed the fact that Ray Rasmussen was not scripturally free to remarry under the Jehovah's Witnesses doctrine. Even though Rasmussens believe defendant Bennett was motivated by animosity toward Ray Rasmussen this does not raise a question of malice. Malice is defined in defamation actions as reckless disregard for the truth but such malice does not include hatred, personal spite, ill-will, or a desire to injure. Madison v. Yunker (1978), 180 Mont. 54, 67, 589 P.2d 126, 133.

Rasmussens contend defendants' statements were defamatory under state law and this Court need not delve into the religious affairs of the Jehovah's Witnesses. We disagree. Defendants' statements were made within the congregation and were based on ecclesiastical doctrine. Defendants are guaranteed the free exercise of religion under the First Amendment of the United States Constitution and Article II, Section 5 of the Montana Constitution.

In Serbian Orthodox Diocese v. Milivojevich (1976), 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151, the Supreme Court found the Illinois Supreme Court had unconstitutionally interfered with the decisions of a hierarchical church in setting aside a bishop's removal and defrockment as unconstitutional. The Court stated:

> Indeed, it is the essence of religious faith the ecclesiastical decisions are reached and are to be accepted as matters of faith whether or not rational or measurable by objective criteria. [Footnote omitted.]

8

426 U.S. 714, 715, 96 S.Ct. 2383, 49 L.Ed.2d 166.

In the present case, this Court would be violating defendants' right to free exercise of religion if we were to find defendants' statements actionable under state defamation law. The record is clear that the hierarchical church, the Watchtower Society, determined that Ray Rasmussen was not scripturally free to remarry in 1969. It is not within this Court's power to question the Watchtower Society's determination.

We find summary judgment in favor of defendants to be proper. Even assuming each allegation by Rasmussens to be true, Rasmussens' claim is barred by the free exercise of religion clause found in both the Federal Constitution and Montana Constitution.

The District Court is affirmed.

_____
Justice

We concur:

_____

_____
John C. Sheehy

_____

_____
Justices

9