676 So.2d 724 (1996)
Mrs. Medford L. GLASS, et al., Plaintiffs-Appellants,
v.
The FIRST UNITED PENTECOSTAL CHURCH OF DeRIDDER, et al., Defendants-Appellees.
No. 95-1442.
Court of Appeal of Louisiana, Third Circuit.
June 12, 1996.
*727 Richard E. Gerard Jr., Lake Charles, for Mrs. Medford L. Glass et al.
Frederick L. Cappel, Lake Charles, for First United Pentecostal Church of DeRidder et al.
James R. Nieset, Lake Charles, for Commercial Union Ins. Co & Defendants.
Before KNOLL, WOODARD and PETERS, JJ.
KNOLL, Judge.
This action for defamation and intentional infliction of emotional distress is before us on the declinatory exception of lack of jurisdiction over the subject matter and a peremptory exception of no cause of action. The focus of this litigation is a dispute among some members of The First United Pentecostal Church of DeRidder (The First United Pentecostal Church) and their pastor, Reverend Leroy Kelly (Reverend Kelly). The trial court sustained both exceptions, finding that the plaintiffs failed to state a cause of action for defamation and intentional infliction of emotional distress. More importantly, the trial court determined that it lacked subject matter jurisdiction to adjudicate this controversy because it required the interpretation of ecclesiastical doctrine that was exclusively within the dominion of the church, and not the court. The plaintiffs appealed the trial court's ruling, contending that it erred in characterizing the dispute as involving ecclesiastical matters. For reasons which follow, we agree with the scholarly and well considered reasons of the trial court, and affirm.

FACTS
On September 26, 1990, the plaintiffs-appellants[1] filed a mandamus action, seeking the production of church financial records of The First United Pentecostal Church. After conducting a hearing on the mandamus action, the trial court issued an order on October 17, 1990, directing the church to produce its financial records for inspection and examination.
The petition of the plaintiffs-appellants in the present action for defamation and intentional infliction of emotional distress allege that subsequent to the filing of the mandamus action, Reverend Kelly disfellowshipped and removed some or all of the petitioners in the mandamus action from the membership rolls of The First United Pentecostal Church. It was not disputed in the trial court that it is an essential tenet of the Pentecostal faith that Holy Scripture prohibits taking another Pentecostal to court.
On September 18, 1991, the plaintiffs-appellants sued The First United Pentecostal Church, its pastor, Reverend Kelly, and their insurers, Aetna Casualty and Surety Company and Commercial Union Insurance Company. The lawsuit alleged that the plaintiffs-appellants were unjustly and illegally disfellowshipped and removed as members of The First United Pentecostal Church, and that Reverend Kelly subjected them to public humiliation, embarrassment, ridicule and distress as a direct result of filing the mandamus action.
This appeal followed the trial court's dismissal of the plaintiffs-appellants' petition for *728 defamation and intentional infliction of emotional distress.

LEGAL ANALYSIS
The plaintiffs-appellants contend that the trial court erred in failing to recognize that their claims were secular and did not involve the application of the rules, tenets or beliefs of The First United Pentecostal Church.
We have reviewed the pleadings, the jurisprudence, and the extensive, well written reasons of the trial court. After carefully considering the contention of the plaintiffs-appellants, we offer a brief remark of our own and adopt the scholarly reasons of the trial court (Appendix "A") in affirming the dismissal of this lawsuit.
It is evident to us that this dispute is rooted in an ecclesial tenet of The First United Pentecostal Church which prohibits members from suing fellow church members. Certainly, in civil law the plaintiffs-appellants had a right to pursue their mandamus action. However, we hasten to add that the religious repercussions that were set into motion as a result of the exercise of their civil right is another matter beyond the reach of judicial authority. In that light, anything we might consider in our analysis of the two exceptions to their petition for damages would require us to apply, interpret, and comment upon The First United Pentecostal Church tenet against the institution of suits among church members. Based upon the Constitution of the United States, Amendment I and the Constitution of the State of Louisiana, Article 1, Section 8, such action would constitute an impermissible interference in the ecclesiastical matters of The First United Pentecostal Church. We decline to do so. Accordingly, we find that the trial court properly maintained the declinatory exception of lack of jurisdiction over the subject matter and the peremptory exception of no cause of action. To have ruled otherwise would have been an error of law.
For the foregoing reasons, the judgment of the trial court is affirmed. Costs of this appeal are assessed to the plaintiffs-appellants.
AFFIRMED.

APPENDIX A

NO. C-91-663
MRS. MEDFORD L. GLASS ET AL VERSUS
THE FIRST UNITED PENTECOSTAL CHURCH OF DE RIDDER ET AL
FILED: April 12, 1995
36TH JUDICIAL DISTRICT COURT
PARISH OF BEAUREGARD
STATE OF LOUISIANA
 /s/ Robbie Hennesey
 DEPUTY CLERK

REASONS FOR JUDGEMENT EXCEPTION NO CAUSE OF ACTION
This matter is presented to the Court by way of an Exception of No Cause of Action, with movant suggesting among other things that the Court lacks jurisdiction over the subject matter of the complaints alleged by the plaintiff in this action. After considering the arguments of counsel and the pre- and post hearing memoranda filed by the parties the Court concludes that the defendant's exception should be maintained for the following reasons:
The First Amendment of the United States Constitution and Article 1, Section 8 of the Louisiana Constitution both guarantee religious freedom and have been interpreted to forbid courts from interfering in the ecclesiastical matters of religious groups. The Serbian Eastern Orthodox Diocese for the U.S. and Canada v. Milivojevich, 426 U.S. 696, 96 S.Ct. 2372, 49 L.Ed.2d 151 (1976); Wilkerson v. Battiste, 393 So.2d 195 (La.App. 1 Cir.1980). This prohibition extends to matters of religious discipline, faith, or custom, as well as to the appointment and removal of ministers. Milivojevich, supra; Joiner v. Weeks, 383 So.2d 101 (La.App. 3 Cir.1980). However, there are limits to this prohibition, and in those cases where religious doctrine is not involved, or may be deferred to, civil courts retain the power to resolve disputes. LeBlanc v. Davis, 432 So.2d 239 (La.1983); Bourgeois v. Landrum, 396 So.2d 1275 (La.1981); Thomas v. Craig, 424 So.2d 1090 (La.App. 1 Cir.1982); Rose *729 Hill Baptist Church v. Jones, 425 So.2d 348 (La.App. 3 Cir.1982); Wilkerson v. Battiste, supra. In addressing objections for lack of subject matter jurisdiction and thus exception for of cause of action, the dispute over removal from membership rolls and the dispute over defamatory and slanderous remarks must be addressed independently as each involves a distinctly different issue with correspondingly different case law. The issue of intentional infliction of emotional distress will also be covered separately from the other two issues because the resolution of the "no cause of action" question in intentional tort suits is on its face independentalthough certainly intertwined in this caseof the question of jurisdiction over subject matter.

JURISDICTION OVER REMOVAL FROM MEMBERSHIP ROLLS
In resolving this particular aspect of the motion, court does not have jurisdiction unless the complaining parties have exhausted their appellate avenues within the church infrastructure. There is nothing in the record to support the conclusion that they have done so. Therefore, we must conclude that the Court does not have jurisdiction over this aspect of plaintiff's complaint at this time.
However, if one assumes, pro arguendo, that the complaining parties had exhausted their appellate remedies under the discipline of the church, it appears that the Court in this circumstance still has no jurisdiction. In making this assumption for the following analysis of the case law to be relevant the Court must also assume: a) that the church organizational structure is hierarchical, b) that in the decision to remove an established process was followed, c) that the decision to remove was affirmed by the highest ecclesiastical tribune within the church. Only under these circumstances would it be possible for this Court to have jurisdiction over the subject matter of this part of the complaint. If these factors do not exist and the highest judicatory body within the church has not ruled on whether or not the minister exceeded his authority the following analysis of case law would not be relevant. In this case, plaintiff "would still have an avenue of relief open to him within the church hierarchy. Thus his action in the civil court would be premature and not ripe for resolution. In such a situation the court would lack subject matter jurisdiction." Bates v. Kingdom Hall of the Congregation, 1986 WL 2899 (Ohio App.1986).
There is a vast body of jurisprudence emanating from the federal and state courts which holds that courts are prohibited by the First Amendment from attempting to resolve church disputes requiring interpretation of church laws and practices because this is interference with ecclesiastical and administrative matters within the church. Milivojevich, supra; Joiner v. Weeks, supra; United Pentecostal Church International, Inc. v. Sanderson, 391 So.2d 1293 (La.App. 2 Cir. 1980), writ denied, 395 So.2d 682 (La.1981). For this reason, Louisiana courts have often declared lack of subject matter jurisdiction over claims involving internal discipline and the government of the church. McManus v. Taylor, 521 So.2d 449 (La.App. 4 Cir.1988); United Pentecostal Church International, Inc. v. Sanderson, supra.
However, more recently Louisiana courts have relied on the "neutral principles of law" approach set forth in Jones v. Wolf, 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 775 (1979) and adopted by the Louisiana Supreme Court in Fluker Community Church v. Hitchens, 419 So.2d 445 (La.1982). The application of the neutral principles approach, however, is not wholly free of difficulty. It requires a civil court to examine certain religious documents, such as a church constitution, with an attitude of neutrality and non-entanglement. As noted by the U.S. Supreme Court in Jones v. Wolf, supra:
"In undertaking such an examination, a civil court must take special care to scrutinize the document in purely secular terms, and not to rely on religious precepts in determining whether the document indicates that the parties have intended to create a trust ... If in such a case the interpretation of the instruments of ownership would require the civil court to resolve a religious controversy, then the court must defer to the resolution of the doctrinal issue by the authoritative ecclesiastical body." 443 U.S. at 603, 99 S.Ct. at 3026.
*730 This method has been employed in practice by Louisiana courts with increasing frequency in adjudicating cases involving consideration of the deeds, statutes governing the holding of church property, the local church's charter, and the general church's constitution and laws. In LeBlanc v. Davis, supra, the La. Supreme Court relied on the election procedures set forth in the church's charter to affirm the dismissal of a pastor by his congregation. The Court in Fluker, supra, decided a church property dispute based on regulations developed by the church. The Court also granted the demand of members of a nonprofit/religious corporation for exercise of their right under the state's corporation law to examine the records of the corporation in Bourgeois v. Landrum, supra. Furthermore, in Smith v. Riley, 424 So.2d 1166 (La.App. 1 Cir.1982), the Court not only determined that the church's board of trustees was illegally constituted but also issued orders necessary to enforce church's compliance with its own articles of incorporation. In each of the above cited cases, no dispute arising in the course of the litigation required the court to resolve an underlying controversy over religious doctrine. Speaking for a unanimous court, Justice Dennis stated in Bourgeois v. Landrum, supra:
"The proper judicial function in such a case presents no hazard to the free development of religious doctrine or of implicating secular interests in matters of purely ecclesiastical concern." at 1278.
Thus, it is clear that when a nonprofit religious corporation has established a charter or some other form of articles of incorporation and the issue at hand involves a procedural nicety having nothing to do with the interpretation of religious law, custom, or policy, it can and should be recognizable within the jurisdiction of the civil courts of this state. As the Supreme Court commented in Fluker, supra, in adopting the neutral principles approach to this state:
"Refusal to adjudicate a dispute over property rights or contractual obligations, even when no interpretation or evaluation of ecclesiastical doctrine or practice is called for, but simply because the litigants are religious organizations, may deny a local church recourse to resolve a just claim, thereby violating its members' rights under the free exercise provision, and also constituting a judicial establishment of the hierarchy's religion." at 447.
It is under this jurisprudential umbrella that the dispute over the alleged improper removal from membership rolls and disfellowship of the plaintiffs must be analyzed. Analogous with the above cited cases in which a charter or other body of regulations was present for examination by the Court, the claims of the plaintiffs in the case sub judice involve the application of an article of the manual of the United Pentecostal Church International, Inc. Furthermore, because plaintiff has submitted solely the text of Article II Section 4 of the church manual for the court to review and did not provide any documentation relative to grounds of removal, it is deduced that the question of improper removal is a "due process" question of a procedural nature rather than a question of improper cause for removal. Thus, at first glance, the circumstances presented in this case clearly indicate an appropriate situation to utilize the "neutral principles of law" approach. However, after examining the text of the Article, the case for applying such principles under civil court jurisdiction appears less certain. Article II Section 4 of the Local Church Government Section of the manual of the United Pentecostal Church International, Inc. reads:
"Section 4. Church Discipline
1. Any member failing or refusing after the first and second admonitions to keep the obligations and abide by the rules of the assembly may be automatically suspended (II Thess. 3:6), or dealt with according to the following methods:
(a) If any member of this church be overtaken in a fault, he or she shall be dealt with according to Gal. 6:1; I John 5:16, 17; and James 5:19, 20.
(b) Any grievance arising between individual members of this assembly shall be dealt with according to Matt. 18:15-18. Should the accused be found guilty by the church, he or she may be disfellowshipped from the membership roll unless he or she truly repents and makes public confession." *731 Although it is clear that the church has specifically set forth guidelines in a manual which governs all members of the United Pentecostal Church, the guidelines as written might require interpretation as to their application. Further,
"[s]uch a determination ... frequently necessitates the interpretation of ambiguous religious law and usage. To permit civil courts to probe deeply enough into the allocation of power with a [hierarchical] church so as to decide ... religious law [governing church polity] ... would violate the First Amendment in much the same manner as civil determination of religious doctrine." Serbian Eastern Orthodox Diocese, Etc. v. Milivojevich, supra, quoting Md. & Va. Churches v. Sharpsburg Church, 396 U.S. 367, 369, 90 S.Ct. 499, 500, 24 L.Ed.2d 582 (1970).
Certain questions which could lead this court to view the church discipline article as ambiguous include: 1) What constitutes an admonition?, 2) What are the rules of the assembly?, 3) What does it mean "to keep the obligations"?, and 4) Who may automatically suspend the member? Further, it is without question that the Court may not undertake to interpret the scriptures referenced within the article in question concerning church discipline. As commanded by the United States Supreme Court in Serbian ..., supra:
"For where resolution of the disputes cannot be made without extensive inquiry by civil courts into religious law and polity, the First and Fourteenth Amendments mandate that civil courts shall not disturb the decisions of the highest ecclesiastical tribunal within a church of hierarchical polity, but must accept such decisions as binding on them, in their application to the religious issues of doctrine or polity before them." at 2380.
In addressing the deduction made above that plaintiffs' dispute was related to "due process" and not to cause of removal, it must be noted that, absent any direct contradicting documentation from a governing body or manual of the church dealing with specific grounds for removal, the court must accept the ruling of the church body as the failure to do so would constitute a breach of the First and Fourteenth Amendments as explained above in Serbian, supra. After reviewing the actual text of Article II in relation to the criteria set forth through federal and state jurisprudence, the adjudication of whether or not the plaintiffs' removal from the membership rolls and disfellowship was legal involves the inquiry into the propriety of religious disciplinary proceedings. The court is further instructed that "[c]onstitutional concepts of due process, involving secular notions of `fundamental fairness'" cannot be borrowed from civil law and impressed upon church governance consistent with church-state separation. Milivojevich, supra. Moreover, church members are not entitled to rely on the incorporation of a church under state laws as the basis for resort to the courts for redress of allegedly violated rights, if these rights require the determination of ecclesiastical matters. Macedonia Baptist Foundation v. Singleton, 379 So.2d 269 (La.App. 1 Cir.1979); Henry v. Newman, 351 So.2d 1277 (La.App. 1 Cir.1977). The Georgia Supreme Court, in ruling on a slander suit arising from a church's expulsion activities, concisely encapsulated with effective language the position of the courts in the realm of religious activity:
"All questions relating to the faith and practice of the church and of its members belongs to the church judicatories to which the members have voluntarily subjected themselves, since, when a person becomes a member of a church, he does so upon the condition of submission to its ecclesiastical jurisdiction, and however much he may be dissatisfied with the exercise of that jurisdiction, he has no right to invoke the supervisory power of a civil court so long as none of his civil rights are involved." Crosby v. Lee, 88 Ga.App. 589, 76 S.E.2d 856 (1953).
Thus, even if the complaining parties have exhausted their appellate remedies within the church structure, this Court should not recognize jurisdiction over subject matter on this issue as it requires the Court to interpret ecclesiastical doctrine which is the duty of the hierarchy of the church exclusively not the Courtand would interfere with the religious principles detailed in the First Amendment of the United States Constitution and Article 1, Section 4 of the Louisiana Constitution.

*732 JURISDICTION AND CAUSE OF ACTION WITH REGARD TO DEFAMATION/LIBEL ALLEGATIONS

While it is evident that the jurisprudence and reasoning discussed above concerning the wall of separation between the church and state are applicable in this matter as well, the crux of this issue is not the ability of a court to utilize a "neutral principles of law" approach to objectively determine the propriety of certain actions based on an incorporated charter or associated by-laws, but instead deals with the fundamental question of tort liability of religious organizationsspecifically with regard to slander and defamation. While the courts have adopted rigorous, specific guidelines and tests by which to adjudicate claims in defamation suits, the primary issue that will be considered in this analysis will be that of subject matter jurisdiction over such by this court as the court is not presently concerned with the merits of plaintiffs' claims.
It is without question that religious organizations are no longer immune from tort liability. Fruge's Heirs v. Blood Services, 506 F.2d 841 (U.S. 5th Cir.1975); Garlington v. Kingsley, 289 So.2d 88 (La.1974); see also Whetstone v. Dixon, 616 So.2d 764 (La.App. 1 Cir.1993). However, the cloak of the religious protections of the First Amendment remains to bar certain actions on the basis of the wall of separation between the church and state. There is little jurisprudence in the state of Louisiana which deals with the tort liability of religious organizations for actions such as defamation, slander, libel, or intentional infliction of emotional distress. Gorman v. Swaggart, 524 So.2d 915 (La.App. 4 Cir.1988), provides the most clear and recent case law concerning such charges. In addressing the difficult question of subject matter jurisdiction, the Fourth Circuit explained:
"In spite of defendant's argument to the contrary, Gorman clearly is not disputing his dismissal as a minister ... This fact alone distinguishes this case from many of those cited by the defendants and lessens the impact of their holdings. More important, however, is the fact that Gorman's suit alleges defamatory acts which occurred outside of the Assemblies of God after he had resigned as a member of that denomination and been formally dismissed as one of its ministers.
We have been presented with no plausible argument to justify these allegedly defamatory actions as part of the church discipline. Moreover, even were we to find that the defendants' post-dismissal statements were legitimately part of internal discipline, there is a serious question as to whether the First Amendment's protection would extend to those statements allegedly made to the press, the general public and pastors in other denominations. In our opinion, these allegations take the case beyond the scope of an internal religious matter. This court may be powerless to interpret the religious doctrine which defendants claim compelled them to publicize their accusations to other members of their church, however, this does not mean they can make those accusations outside their church and not face the legal consequences... To the extent that the Assemblies of God interprets scripture and its own internal rules to require disclosure of Swaggart's accusations against Gorman to its members as part of the disciplinary process, civil courts may be precluded from interfering, even if the accusations appear to be false and defamatory. However, by taking their accusations outside their church, the defendants have also taken themselves outside the scope of the First Amendment's protection and, to that extent, have exposed themselves to the jurisdiction of the civil courts." (emphasis added). at 922.
In overruling the exception of lack of subject matter jurisdiction, the Gorman Court asserted that religious organizations may be held liable for defamatory remarks and accusations uttered outside of their church. Furthermore, due to his resignation from the denomination, Gorman was not a member of the Assemblies of God when most of the defamatory accusations were made. Thus, the defamatory statements were voiced outside of the church at someone outside of the denomination. In its ruling, the Gorman Court opined that statements made to the press and general public would take the case *733 beyond the scope of an internal religious matter. In contrast to Gorman, the case sub judice deals primarily with comments that were made to members of the Pentecostal Church by a Pentecostal minister about several other members of the Pentecostal Church. Two other Louisiana cases Joiner v. Weeks, supra and McManus v. Taylor, supraexamine alleged defamatory remarks directed toward a pastor as a result of his dismissal by the governing body executing the dismissal. The Joiner court observed and was later quoted in McManus:
"It would be ludicrous to believe that the constitutional principles upheld by the United States Supreme Court in Milivojevich could be satisfied by allowing this intrusion into the disciplinary proceedings of an ecclesiastical board. To allow defamation suits to be litigated to the fullest extent against members of a religious board who are merely discharging the duty which has been entrusted them by their church could have a potentially chilling effect on the performance of their duties..." McManus v. Taylor, supra. at 451.
This case is also distinguishable from the case sub judice to both the extent of the alleged accusations and the realm in which these accusations were made. However, the end result of the Joiner Court's fears would be realized if a pastor, serving in proper capacity as disciplinarian, was held liable for statements made subsequent to discharging his duty. Yet, as Joiner also pointed out, it is essential "to balance the right of an individual to protect his good name and reputation against the right of a religious organization to conduct its affairs free of civil court scrutiny or intrusion." at 105. Nonetheless, Joiner struck a balance favoring the religious organization in recognizing a qualified privilege. at 105. It is from this small body of cases that Louisiana has developed its jurisprudence on such actions as defamatory statements by religious leaders. However, because of the pervasive nature of the principles of religious freedom and separation, the court should not overlook applicable jurisprudence from other jurisdictionson both federal and state tiers. While the Gorman Court did not specifically address the point as it was not relevant to the case, it is important and necessary to note the prevalent reasoning of both federal and state courts in viewing actions against religious organizations for libel and slander as a result of disciplinary proceedings. Courts generally do not scrutinize closely the relationship among members or former members of the church, and churches are afforded great latitude when they impose discipline on members or former members as religious activities concerning only members of the faith ought to be as near to absolutely free as anything can be. Paul v. Watchtower Bible & Tract Soc. (C.A.9, 1987) 819 F.2d 875, cert. den. 484 U.S. 926, 108 S.Ct. 289, 98 L.Ed.2d 249. This view which is universally held by federal and state courts is based on the notion that a person who assumes voluntarily to be a member of a religious organization gives consent, either implied or express, to conform to the canons and rules and to submit to the authority of the church. See Watson v. Jones, 80 U.S. 679, 13 Wall. 679, 20 L.Ed. 666; Kedroff v. St. Nicholas Cathedral ..., 344 U.S. 94, 73 S.Ct. 143, 97 L.Ed. 120; Presbyterian Church in U.S. v. Mary Elizabeth Blue Hull Memorial Church, 89 S.Ct. 601, 21 L.Ed.2d 658, on remand 225 Ga. 259, 167 S.E.2d 658, cert. den. 396 U.S. 1041, 90 S.Ct. 680, 24 L.Ed.2d 685; Milivojevich, supra; Farnsworth v. Storrs, 59 Mass. (5 Cush.) 412 (1850). Since plaintiffs detail numerous allegations in petition concerning defamatory statements and intentional infliction of emotional distress many of which are inherently different in naturethe individual analysis of each allegation provides the Court with the most prudent way in which to examine these matters. In ruling on exception of no cause of action, court must accept all allegations of the petition as true and sustain the exception only if the law affords no remedy under any evidence that is admissible in the pleadings. Ward v. Tenneco Oil Co., 564 So.2d 814 (La.App. 3 Cir.1990). Furthermore, purpose of exception of no cause of action is to determine sufficiency in law of petition and is triable on the face of papers; no evidence may be introduced to support or controvert objection of no cause of action. Ward v. Tenneco Oil Co., supra; Sevarg Co., Inc. v. Energy Drilling Co., 591 So.2d 1278 (La.App. 3 Cir.1991).
*734 Plaintiffs' specific allegations of intentional infliction of emotional distress and defamation are first detailed in paragraph 10 subparagraph (a) of the Second Supplemental and Amending Petition, stating:
"a) On October 3, 1990, defendant, LEROY R. KELLY, distributed copies of plaintiff's petition for mandate at a weekly church service in an attempt to harass, publicly humiliate and intimidate plaintiffs into dismissing the said mandamus proceedings;"
In addressing plaintiffs' first allegations, the Court must note that recognizing a cause of action under this subparagraph would be tantamount to intrusion on the right to the free exercise of religion. Plaintiffs were members of the church at this timedoing so voluntarily. Internal church discipline is an internal matter of ecclesiastical concern, and thus it is protected by Louisiana law from interference from the courts. See Joiner v. Weeks, supra. Furthermore, "criminalizing" this matter would require the court to superimpose its own notions of "right and wrong" upon the church while limiting a religious organization's ability to control its own worship service. Based on the latitude which has been recognized universally for religious organizations to conduct and regulate its internal affairs, the Court should not recognize subject matter jurisdiction over this claim.
The allegations raised in subparagraph (b) are of a different sort, stating:
"b) Following the issuance of an order on October 17, 1990, directing the defendant church to produce its financial records for inspection and examination by representatives of the plaintiffs, certain plaintiffs learned through articles that the defendant church had automatically suspended at least one or more of the plaintiffs for bringing the action for mandamus;"
The allegations in this subparagraph do not state a cause of action against defendants on several different grounds. The court needs to look no further than the fact that subparagraph (b) does not allege that defendant caused such action to occur. Although in an exception of no cause of action, "allegations of fact are conceded to be true and generously interpreted so as to maintain the petition's sufficiency" [Taylor v. Woodpecker Corp., 552 So.2d 81 (La.App. 3 Cir. 1989)], the court would indeed be stretching the boundaries of such by inserting defendant into an accountable role in subparagraph (b)'s allegations. Simple analysis would show a faulty cause/effect relationship problem in this allegationcommonly referred to as the "domino fallacy". Just because A happened before B does not mean that A caused B. Anyone in attendance at the service in question could have released such information to the general public or a local newspaper. Thus, the court needs not examine subject matter jurisdiction on this charge. Admittedly, defamatory statements made outside of the church's walls pose a much more difficult problem.
Plaintiff next charges in subparagraph (c) that:
"c) Following the filing of Plaintiffs' Exhibit 1, defendant, LEROY R. KELLY, would, at various church services, harass the plaintiffs by observing their presence as "evil spirits in the congregation," for whom he had to stop the service to "pray them out;"
Once again, this is a matter of ecclesiastical concern. While the reasoning discussed above in subparagraph (a) would suffice, the Court should also look to a very similar case involving a defamation suit brought against the Jehovah's Witness Church for allegedly defamatory statements that were made by the minister during a worship service. In Rasmussen v. Bennett (1987, Mont.) 741 P.2d 755, the Court affirmed the dismissal of the defamation suit brought by former members of the church. The minister's alleged defamatory conduct was based on his informing the church during a worship service of the plaintiffs' disfellowship for "conduct unbecoming Christians." Furthermore, the minister offered that "we got the filth cleaned out of the congregation, now we will have God's spirit." The Court rejected the contention that it need not delve into the religious affairs of the Jehovah's Witnesses in order to resolve the defamation claim, further stating that it would be violating the defendants' right to free exercise of religion if it were to find their statements actionable under state defamation *735 law. Even assuming each allegation in the complaint to be true, the Court concluded that the defamation claim was barred by the free exercise clause of the First Amendment. Analogous to Rasmussen, supra, the Court would necessarily have to delve into the religious affairs of the First United Pentecostal Church of DeRidder to settle this allegation of defamation. Thus, plaintiffs' complaint in subparagraph (c) should not be recognized for lack of subject matter jurisdiction.
In examining subparagraph (d), it is unclear whether or not plaintiffs state a cause of action against anyone for defamation. The issue of intentional infliction of emotional distress on this allegation will be pursued in the next section. Subparagraph (d) reads:
"d) Accountants retained by the defendants to conduct an internal audit called certain of the plaintiffs at night to complain about their levels of contributions to the church and to inquire into their personal finances, demanding to be furnished copies of certain income tax records;"
La.R.S. 14:47 defines defamation as "the malicious publication or expression in any manner, to anyone other than the party defamed, of anything which tends .." Construing this statement in the most favorable light, the claim would state no cause of action as, based on the pleadings, the statements were not apparently made to anyone other than the individual plaintiffs. In any case, no malice is suggested. Furthermore, tithing is at the root of ecclesiastical doctrine. If these complaints are in any way related to discipline on such, they would fall outside of the Court's jurisdiction. Thus, on the numerous grounds suggested, the court should not recognize a cause of action for defamation on this contention.
The allegations in subparagraph (e) are definitely the most difficult to address. The plaintiffs plead as follows:
"e) On Thursday, September 19, 1991, defendant, LEROY R. KELLY, gave an interview to a television station in which he informed the public at large that plaintiffs had been removed from the church rolls for violation of a doctrinal position that no church member could take another to court, when in truth, plaintiffs had been removed from the church rolls simply in an attempt to sanction them for bringing the mandamus proceeding to assert their legal right to have the financial records of the defendant church examined."
While the nature of the plaintiffs' removal from church rolls cannot be determined by the Court as discussed in the first section of this memorandum, the forum which the defendant chose in informing the public could well take the matter out of a subject matter jurisdiction question. The Court in recognizing a cause of action here would not be forced to review religious doctrine. The question is not whether or not plaintiffs were legally disfellowshipped but rather whether or not plaintiffs were defamed by comments occurring outside of the church. The Gorman Court seriously questioned if statements outside of the church and outside of the religion in general were protected by the First Amendment. Furthermore, in defamation suits, Louisiana courts have generally held that for a conditional privilege to exist, it must be made: 1) in good faith, 2) on a subject matter in which the communicator has an interest or in reference to which he has a duty, and 3) to a person having a corresponding interest or duty. Rennier v. State, Through Dept. of Public Safety, 428 So.2d 1261 (La.App. 3 Cir.1983). Thus, while a conditional privilege has been recognized in religious proceedings in Louisiana, that privilege has not directly been extended when the general public becomes the forum. However, it should be noted that Section 208 of American Jurisprudence 2d which deals with religious and church matters relating to libel and slander states:
"It is firmly established that conditional privilege attaches to communications between church members and authorities in respect of organizational and administrative matters, and as to church matters which are of mutual interest and concern, or which is authorized or required by church rules, and this is true even though the defamatory imputations are published to persons who are not members of the religious organization, or to the public generally ... As in other cases, the doctrine *736 of privilege in regard to church matters has its limitations ... [A] communication generally is not privileged if it was not made during the regular course of church discipline or in connection with official matters of the church. It is likewise established that conditional privilege does not exist if the defamatory imputation was actuated by malice or improper motive, or if there was no reasonable ground for believing it was true." (citations omitted). (Emphasis added by Court.)
A similar case was adjudicated by the Florida Supreme Court in Loeb v. Geronemus, 66 So.2d 241 (Fla.1953), in which the court offered at 244:
"The letter of expulsion ... is the only written matter of alleged defamatory character set forth in the complaint. The legality of this act of expulsion was not attacked prior to the bringing of this suit, and cannot be questioned in a proceeding of this nature ... Since the letter of April 21 contains nothing more than an announcement of expulsion from membership and restriction from the premises of the organization in question, it cannot under the circumstances be considered libelous in nature. By this particular action appellees were simply "making publication of disciplinary action taken." Insofar as the complaint purports to state a cause of action in libel it is, therefore, insufficient." (Emphasis added by Court.)
The elements of the case sub judice seem to be quite similar to the above cited case law. It is not alleged that any statements other than those which announced the plaintiffs' expulsion were made to the press. However, if no qualified privilege is deemed to exist, the issue is probably best resolved by examining whether or not plaintiffs state a cause of action under state defamation law. For defamatory words to be actionable, there must be proof of publication, falsity, malice, and resulting injury. Wilson v. Capital City Press, 315 So.2d 393 (La.App. 3 Cir.1975), writ denied 320 So.2d 203; Smith v. Atkins, 622 So.2d 795 (La.App. 4 Cir. 1993); Manale v. City of New Orleans, Dept. of Police, et al., 673 F.2d 122 (C.A.5, 1982). Plaintiffs state proof of publication and injury in their pleadings, which must be accepted as true for purposes of exception. However, as discussed above, the truth or falsity of the pastor's statement cannot be determined by the court. Furthermore, malice is not alleged. Thus, it appears that the court should dismiss this complaint for failure to state a cause of action for defamation. However, if the court were to determine that the comments were libelous per se, then the falsity and malice elements need not be proven and a cause of action would therefore be stated for defamation. It should be noted, though, that in the absence of a showing of other defamatory words or imputations, a mere statement to the effect that a member of a religious organization has been expelled from membership, whether spoken or published by church authorities or reported by a newspaper, has generally been held not defamatory, unless such publication also contained a charge of extravagant words of irreligious or immoral conduct or tended to injure plaintiff in his profession. (citations omitted) 50 Am.Jur.2d 209. None of which is evident in this case.
Plaintiffs set forth in paragraph 11 their final four specific allegations of defamation and intentional infliction of emotional distress. Subparagraphs (a) and (b) can be assessed jointly as they state:
"a) By leaving plaintiffs' names off of a roll call and demanding that those whose names were not called to leave the building as they were no longer voting members of the church;
b) By flashing various newspaper articles on the wall of the church detailing the procedural history of the mandamus action and public remarks made by the litigants therein;"
It has been extensively documented throughout these reasons for judgement that the free exercise of religion clause prohibits the courts from interfering in matters of doctrine, church discipline, religious office, and religious practice. Therefore, the court has no subject matter jurisdiction over the claims presented in (a) and (b).
Subparagraph (c) which is listed below was analyzed in length in the section I"Jurisdiction over removal from membership rolls." In short, the court has no subject matter *737 jurisdiction on any claim pleaded in (c), which reads:
"c) By illegally attempting to disfellowship plaintiffs without following church rules, guideline and due process provisions;"
There are no allegations that the plaintiffs have even completed the intra-church review procedures set out in the church discipline.
The allegations in subparagraph (d) once again involve comments made outside of the church. It reads as follows:
"d) By discussing with the news media, including newspapers and television, the attempt to disfellowship plaintiffs and the illegal removal of plaintiffs' names from the rolls of the defendant church, all to the great embarrassment and humiliation of plaintiffs."
The resolution of this complaint would follow in accordance with the guidelines previously mentioned above in resolving 10(e). It should be noted that malicea key element in defamationis not alleged. Further, the Court does not find such statements to be libelous per se; they simply report a fact which has resulted from the operation of the internal procedures within the church and the stated discipline.

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
After examining the question of subject matter jurisdiction, the allegation(s) which have not been excepted for such should be reviewed and then considered for a possible peremptory exception for no cause of action as to the intentional tort allegations for the submitted reasons. It is without question that the Court on its own motion can supply a peremptory exception for failure to disclose a cause of action. Louisiana Code of Civil Procedure Article 927. Before examining the specific Louisiana guidelines for this intentional tort, the Court should review the nature of the claims themselves. As the Ninth Circuit Court of Appeals held in Paul v. Watchtower Bible & Tract ..., supra:
"Intangible or emotional harms cannot ordinarily serve as a basis for maintaining a tort cause of action against a church for its practicesor against its members. Cf. West Virginia State Board of Education v. Barnette, [319 U.S. 624, 644] 63 S.Ct. 1178, 1189 [87 L.Ed. 1628]. Offense to someone's sensibilities resulting from religious conduct is simply not actionable in tort. See Cantwell v. Connecticut, [310 U.S. 296] 60 S.Ct. 900 [84 L.Ed. 1213]; cf. Cohen v. California, [403 U.S. 15] 91 S.Ct. 1780 [29 L.Ed.2d 284] ... A religious organization has a defense of constitutional privilege to claims that it has caused intangible harmsin most, if not all, circumstances [absent showing of actual malice to overcome privilege]. As the United States Supreme Court has observed, "[t]he values underlying the two provisions [of the First Amendment] relating to religion have been zealously protected, sometimes even at the expense of others interests." Wisconsin v. Yoder, [406 U.S. at 212] 92 S.Ct. at 1532. Providing the Church with a defense to tort is particularly appropriate here because Paul is a former Church member.... We agree with Justice Jackson's view that "[r]eligious activities which concern only members of the faith are and ought to be freeas nearly absolutely free as anything can be." Prince v. Massachusetts, [321 U.S. 158, 177] 64 S.Ct. 438, 445 [88 L.Ed. 645].
The Supreme Court in White v. Monsanto Co., 585 So.2d 1205 (La.1991) clearly states the prevailing judicial position in handling claims of intentional infliction of mental distress. The Court, although affirming the viability of a cause of action for intentional infliction of emotional distress as an independent tort, generally defined it in accordance to the Restatement. Id. at 1209. In doing so, the Court held that
"[o]ne who by extreme and outrageous conduct intentionally causes severe emotional distress to another is subject to liability for such emotional distress ... [In order to recover from such,] a plaintiff must establish (1) that the conduct of the defendant was extreme and outrageous; (2) that the emotional distress suffered by the plaintiff was severe; and (3) that the defendant desired to inflict severe emotional distress or knew that severe emotional distress would be certain or substantially certain to result from his conduct. *738 The conduct must be so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community. Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities. Persons must necessarily be expected to be hardened to a certain amount of rough language, and to occasional acts that are definitely inconsiderate and unkind ... The distress suffered must be such that no reasonable person could be expected to endure it ... The conduct must be intended or calculated to cause severe emotional distress and not just some lesser degree of fright, humiliation, embarrassment, worry, or the like." (emphasis added). at 1209, 1210.
While the factual allegations made in plaintiff's petition must be taken as true for purposes of deciding "no cause of action" questionthus satisfying the intent element evidence of factual allegations concerning the other two elements are not as clear. Although plaintiffs claim humiliation and embarrassment in petition, the element of severe emotional distress is absent. Furthermore, the conduct of which plaintiff asserts to the defendant would not seemingly fall under the definition of outrageous by the White Court. In viewing paragraph 10 subparagraph (e) and paragraph 11 subparagraph (d) of the Second Supplemental and Amending Petitionwhich are the only legitimate claims against defendant that occurred outside of the churchthe actions of defendant do not seem to fall within the Court's definition of outrageous. Furthermore, the claims under 10(b) and (d) of the Second Amending Petition could in no way be construed as outrageous conduct. It should be further noted that
"[o]ther courts have extended free exercise protection to bar recovery for intentionally tortious activity. In Paul v. Watchtower Bible & Tract Society of New York, Inc., supra at 879-883, the United States Court of Appeals for the Ninth Circuit held that the First Amendment free exercise clause provided a complete defense to claims of outrageous conduct, defamation, invasion of privacy, and fraud. The court noted that free exercise concerns barred recovery despite the "real and not unsubstantial" harms suffered by the plaintiff at the hands of the defendant religious organization. (emphasis added) Id. at 883. And in Molko v. Holy Spirit Ass'n for Unification of World Christianity, 252 Cal.Rptr. 122, 762 P.2d 46, the Supreme Court of California held that claims of intentional infliction of emotional distress are barred by the First Amendment to the extent they are based on protected religious speech." Murphy v. I.S.K. Con. of New England, 409 Mass. 842, 571 N.E.2d 340.
Thus, as instructed by Greene v. Roy, 604 So.2d 1359 (La.App. 3 Cir.1992) and Steadman v. South Central Bell Telephone Co., 362 So.2d 1144 (La.App. 2 Cir.1978), absent any of the required elements necessary for intentional infliction of emotional distress (i.e. outrageous conduct, severe emotional distress, and intent), plaintiff does not have a cause of action.

CONCLUSION
Plaintiffs' allegations can be basically divided into two separate claims. First, plaintiff claims illegal conduct on the part of the First Pentecostal Church as a result of their being disfellowshiped. This argument is clearly not within the jurisdiction of the civil courts of this state. Second, plaintiff claims illegal conduct based on defamation and intentional infliction of emotional distress as a derivative of the first claim. In reviewing the plaintiffs' allegations related to this conduct, it is clear that subparagraphs (a) and (c) of paragraph 10 and subparagraphs (a)(c) of paragraph 11 are outside of the court's jurisdiction because of the First Amendment free exercise of religion clause. Furthermore, subparagraphs (b) and (d) of paragraph 10 fail to state a cause of action against plaintiffs on either grounds of defamation or intentional infliction of emotional distress. However, the allegations in subparagraphs (e) and (d) of paragraphs 10 and 11, respectively, provide the Court with a more difficult "exception" question. However, after careful analysis of the allegations in *739 light of the case law discussed above, the Court concludes that the plaintiff's allegations are not per se defamatory, nor are they extravagant or outrageous in their syntax. There is no cause of action stated by these allegations. The exception is therefore maintained and plaintiff's suit is dismissed at plaintiff's costs.
Dated, DeRidder, Beauregard Parish, Louisiana, this 6th day of April, 1995.
 /s/ Signature
 District Judge
NOTES
[1] The plaintiffs-appellants are Mr. Medford L. Glass, Mrs. Medford (Naomi) Glass, Mrs. Ora A. Dion, Amalie A. Smith, Jean C. Cagle, Sara Maxine Banks, Clarence R. Banks, Harold Goins, Nadine Goins, Madella Henagan, Mary M. Alston, Sable Davis, Connie E. Davis, Iva Jean Wolsefer, Carl N. Wolsefer, Gay Dion, Billie Trent, Harry Trent, Mary Helen Perkins, and Robert F. Alston.